BERGER SINGERMAN, P.A.
Paul Steven Singerman FL Bar No. 378860
Jordi Guso FL Bar No. 863580
Brian G. Rich FL Bar No. 38229
200 South Biscayne Blvd., Suite 1000
Miami, Florida 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
E-Mail: singerman@bergersingerman.com
        jguso@bergersingerman.com
        brich@bergersingerman.com

DAVID C. FARMER ATTORNEY AT LAW LLLC
David C. Farmer   3946
225 Queen Street, Suite 15A
Honolulu, HI 96813-4639
Telephone: (808) 222-3133
Facsimile: (808) 529-8642
E-Mail: farmerd001@hawaii.rr.com

Co-Counsel to the Debtors

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re: | ) | Case No. 08-00337 |
| | ) | (Chapter 11 Cases) |
| ALOHA AIRLINES, INC., | ) | (Jointly Administered) |
| a Delaware corporation, et al.,[1] | ) | (Honorable Lloyd King) |
| | ) | |
| Debtors. | ) | |
| | ) | |
| This document relates to: | ) | |
| | ) | |
| ALL CASES | ) | |
| | ) | |

---

[1] The last four digits of the taxpayer identification number for each of the debtors follows in parentheses: (a) Airgroup (9996); (b) Aloha (4888); and (c) Acquisition (8526). The address for all Debtors is 500 Two Waterfront Plaza, 500 Ala Moana Boulevard, Honolulu, Hawaii.

**EMERGENCY MOTION OF THE DEBTORS FOR AN
ORDER AUTHORIZING DEBTORS TO DISCONTINUE
THEIR SCHEDULED FLIGHT OPERATIONS AND TAKE
CERTAIN ACTIONS IN CONNECTION THEREWITH;
AND DECLARATION OF JEFFREY R. KESSLER**

Aloha Airlines, Inc. ("Aloha"), Aloha Airgroup, Inc. ("Airgroup") and Airgroup Acquisition Corp. ("Acquisition"), debtors and debtors-in possession (collectively the "Debtors" or the "Companies"), hereby move the Court for the entry of an order pursuant to sections 105(a) and 363 of title 11, United States Code (the "Bankruptcy Code") authorizing the Debtors to discontinue their scheduled passenger flight operations and take certain actions in connection therewith. It is unclear whether the relief sought herein is mandated by the Bankruptcy Code or other non-bankruptcy law. Nevertheless, this motion (the "Wind-Down Motion") is filed in an abundance of caution so as to provide notice to this Court, and to parties in interest in the above captioned cases. In support of the Wind-Down Motion, the Debtors respectfully represent as follows:

Preliminary Statement

The filing of this Motion coincides with the discontinuation of passenger operations of one of Hawaii's most well respected companies. For the State of Hawaii, all parties in interest and most importantly thousands of dedicated employees who have committed tremendous time and effort to creating and operating the Debtors' airline operations, the discontinuation of passenger operations represents the end of what has been a dedicated and passionate commitment to excellence in the airline industry. Since 1946, the Debtors and their

employees have served the State of Hawaii tirelessly, with a commitment to customer service and excellence in air travel. Unfortunately, after over 60 years of excellence, the Debtors have made the difficult decision that they must seek to discontinue their scheduled passenger flight operations in order to maximize the value of their estates for their creditors. Although the Debtors' have worked feverishly to create a solution that does not involve discontinuing passenger operations, the conditions in the market place simply will not allow the Debtors time necessary to secure an investment by or sale to a third party of sufficient value to allow for the continued operation of the Debtors' passenger service.

Accordingly, by this Wind-Down Motion, the Debtors seek authority to discontinue their scheduled passenger flight operations. Although the Debtors view various of the first day orders entered in this case as vesting the necessary authority in the Debtors to make certain of these payments and take certain of these actions without additional Court authority, the Debtors are presenting all of the information herein to give the Court and all parties in interest a complete presentation of the events forthcoming in the Debtors' cases. The Debtors also will be filing certain other motions contemporaneously with this Wind-Down Motion or in the coming days seeking additional relief related to the discontinuation of operations.

### Jurisdiction And Venue

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

3.      On December 30, 2004, Airgroup and Aloha filed petitions for relief under Chapter 11 of the Bankruptcy Code in this Court and their cases were jointly administered under Case Number 04-03063 before the Honorable Robert J. Faris (the "Prior Cases" or "Aloha I").

4.      On November 27, 2005, the Court entered an order (the "Confirmation Order") confirming the joint plan of reorganization proposed by Airgroup and Aloha and Yucaipa Corporate Initiatives Fund I, L.P. (the "Prior Plan"). The effective date of the Prior Plan occurred on February 20, 2006 (the "Effective Date").

5.      On March 20, 2008 (the "Petition Date"), the Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code.

6.      On March 28, 2008, the office of the United States Trustee appointed an official committee of unsecured creditors.

7.      The Debtors continue to operate and manage their businesses, as debtors-in-possession, pursuant to Bankruptcy Code §§ 1107 and 1108.

8.      In support hereof and for a detailed description of the Debtors', their assets and liabilities and their operations, the Debtors respectfully refer the Court

to the *Declaration of Jeffrey R. Kessler in Support of Various First Day Applications and Motions* (the "Kessler Declaration") (D.E. #7) and the *Declaration of Jeffrey R. Kessler in Support of the Wind-Down Motion* attached hereto at Exhibit "A."

## The Debtors' Business Operations

9.    Airgroup, a Hawaii corporation, is the parent and sole shareholder of Aloha, a Delaware corporation.2   Aloha operates commercial air transportation services based in the State of Hawaii.   The Companies have a total of approximately 3,550 employees.

10.    Aloha currently serves five (5) destinations within the State of Hawaii (Honolulu, Lihue, Kahului, Kona, and Hilo), and six (6) destinations on the United States mainland (Oakland, Orange County, Sacramento, Reno, Las Vegas, and San Diego).

11.    In addition to passenger transportation, Aloha also provides cargo transportation services (the "Air Cargo Business") and aviation contract services to various other airlines.   The Air Cargo Business handles 85% of the cargo traffic in the State of Hawaii, including a major contract with the US Postal Service to carry mail among the Hawaiian islands. The Air Cargo Business is the easily the most profitable of Aloha's four business segments, and has generated (unaudited)

---

[2] Aloha has one other active subsidiary, AG Airgroup Insurance, Inc. ("Airgroup Insurance"), a wholly-owned "captive" insurance company that provides workers' compensation insurance to Aloha.

earnings before interest, taxes, depreciation and amortization (EBITDA), after allocated general and administrative expenses, of more then $6 million in recent years.

12.     Many of the objectives the Debtors set in the Aloha I Cases were achieved.  However, following emergence two factors continued to put strain on the Debtors' cash flow and operations: (a) the irrational – and the Debtors submit unlawful – fare war initiated by Mesa Airlines, Inc. intended to destroy Aloha, and (b) the unprecedented increase in fuel prices.  The first has had a dramatic impact on the Aloha's inter-island passenger revenue.    The second has dramatically increased operating expenses at a time when air fares could not be increased.

13.     The Debtors elected to commence these cases to achieve two principal goals: (a)     preserve the value of their assets for the benefit of all constituencies with as little disruption as is possible to Aloha's valued customers; and (b) commence a process for an orderly sale or disposition of the airline as a whole or its four discrete  business segments:  inter-island passenger service, trans pacific passenger service, inter-island cargo, and contract services.

## The Debtors' Current Financial Position

14.     As of the Petition Date, the Debtors had approximately $3.8 million in unrestricted and unencumbered cash and (b) $30.8 million in restricted cash.  As of the date of the filing of this Wind-Down Motion, the Debtors had approximately (a)

$900,000 in unrestricted and unencumbered cash and $31.2 million in restricted cash. The Debtors also have accrued and unpaid postpetition administrative expenses, including aircraft rent, professional fees, wages, fuel and other operating costs, of approximately $3.5 million as of the date of the filing of this Wind-Down Motion.

15.     Without a debtor-in-possession financing facility of significant measure, the Debtors submit that they will run out of unrestricted and unencumbered cash during the week of March 31, 2008. In order to avoid incurring administrative expenses attendant to the continued operations of scheduled passenger service, the Debtors have no choice but to discontinue such service in order to properly discharge their fiduciary duty to all creditors.

16.     Notwithstanding the cessation of passenger service, the Debtors plan to continue operations of their Air Cargo and Contract Services segments, both of which have historically been profitable and both of which are subject of continued *bona fide* purchase offers.

### The Process of Discontinuing the Debtors' Scheduled Passenger Flight Operations

17.     Given the Debtors' liquidity constraints and expected cash burn, the Debtors have determined not to further pursue a going concern bid for their passenger service business segment. Instead, the Debtors believe that the proper course of action at this time is to immediately discontinue their scheduled

passenger flight operations to avoid incurring administrative expenses and properly discharging their fiduciary duties to creditors. The process for discontinuing the Debtors' passenger flight operations is described below.

### a. *Operations*

18. The Debtors have developed a plan to discontinue their scheduled passenger flight operations in as orderly a manner as possible. Pursuant to that discontinuation plan, the Debtors issued a press release on the same day as the filing of this Wind-Down Motion announcing their intention to discontinue passenger operations on the evening of March 31, 2008. On that date, the Debtors' last passenger flights are scheduled to arrive back in Honolulu in the late evening. All of the Debtors' passenger aircraft will be made available to the appropriate lessors and secured parties if this Wind-Down Motion is granted, and under the terms and conditions proposed in the Wind-Down Rejection Motion, filed contemporaneously herewith. The Debtors also will take steps to secure their facilities and the assets located therein.

### b. *Aircraft Lease Rejections*

19. As indicated above, among the Debtors' remaining key operating assets are the aircraft in their operating fleet (the "Remaining Aircraft"). Pursuant to Wind-Down Rejection Motion, the Debtors will seek to reject the leases for all of the leased passenger aircraft and to abandon certain of their owned aircraft used

in conjunction with passenger services.

20.     Following the discontinuation of scheduled passenger flight operations, the Debtors will focus their attention on liquidating their individual assets in an orderly fashion and minimizing the claims asserted against the Debtors' estates.[3] The Debtors, in consultation with the Official Committee of Unsecured Creditors, will determine the appropriate manner for selling or otherwise disposing of their assets. The Debtors have continued and will continue discussions with bidders that have expressed interest in various components of the Debtors' business. In addition, the Debtors may, by separate application, seek to retain one or more firms to assist in devising an auction process that maximizes the value of certain assets in a post-discontinuation of operations environment.

c.     *The Additional Wind-Down Motions*

21.     In the near future, the Debtors may also file one or more additional motions in connection with the wind-down of these estates. There are a number of other matters that would enable the orderly wind-down of these estates, but which do not require relief as immediately as the relief that is requested in this Wind-Down Motion. Such items include:

---

[3] To wit, on March 27, 2008 the Debtors filed the *Emergency Motion For Entry Of Order (A) Approving Competitive Bidding And Sale Procedures For Sale Of Air Cargo Business; (B) Approving Form And Manner Of Notices; (C) Approving The Form Of Definitive Asset Purchase Agreement To Be Used For The Sale Of The Assets, Including, If Applicable, The Break-Up Fee; (D) Scheduling Dates To Conduct Auction And Hearing To Consider Final Approval Of Sale, Including Treatment Of Executory Contracts And Unexpired Leases; And (E) Granting Related Relief* (the "Bid Procedures Motion") (D.E. No. 87).

a. authority to reject certain executory contracts and unexpired leases that are no longer necessary to these estates and to approve procedures to reject contracts and leases in the future;

b. the establishment of bar dates; and

c. the authority to retain one or more firms to liquidate the Debtors' assets.

## Relief Requested

22.     As a result of the foregoing, by this Wind-Down Motion, the Debtors seek entry of an order authorizing the Debtors to discontinue their scheduled passenger flight operations and to take necessary or appropriate measures to implement the winding down of their affairs.

## Request to Discontinue the Debtors' Scheduled Flight Operations and Take Certain Actions in Connection Therewith

23.     Pursuant to this Wind-Down Motion, the Debtors seek authority to immediately discontinue their scheduled passenger flight operations and take all actions necessary or appropriate in furtherance thereof.[4]  As described in detail above, the necessity to discontinue scheduled passenger flight operations has been precipitated by the Debtors' foundering cash position and the expected cash burn from continued operations, and their inability to secure the necessary investment in, or purchase of, the Debtors' passenger business on a going concern basis at a price and on terms that maximize value to the Debtors' estates.  Under the circumstances, based on the Debtors' business judgment, discontinuing their scheduled passenger

---

[4] Steps that the Debtors may need to take to wind down operations include, among other things, securing the service of a security services firm to protect the Debtors' physical assets.

flight operations will allow for an orderly disposition of the assets of the Debtors' estates, and thus maximize any potential recovery to creditors.

24.     Section 363(b) of the Bankruptcy Code provides in pertinent part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). In general, a debtor may use property of the estate outside of the ordinary course of its business where the use of such property represents an exercise of the debtor's sound business judgment. See, e.g., In re North Brand Partners, Inc., 200 B.R. 653 (9th Cir. BAP 1996); In re Martin, 91 F.3d 389, 395 (3d Cir. 1996) (citing Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991)); see also Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (citing Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983)); In re Abbotts Dairies of Pa., Inc., 788 F.2d 143,145-47 (3d Cir. 1986) (implicitly adopting the articulated business judgment test of Lionel Corp.).

25.     In addition, section 105(a) of the Bankruptcy Code empowers a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [Bankruptcy Code]." 11U.S.C. § 105(a). Accordingly, bankruptcy courts frequently utilize their equitable powers under section 105(a) to authorize a debtor to take actions, such as those requested here, that are consistent

with the provisions of the Bankruptcy Code and that are necessary to preserve the value of a debtor's assets and estate. <u>See</u>, e.g., <u>In re Sam Daily Realty, Inc.</u>, 57 B.R. 83 (Bankr. D. Hawaii 1985); <u>In re Pizza of Hawaii</u>, 12 B.R. 796 (Bankr. D. Hawaii 1981); <u>In re Decora Indus.</u>, 2002 U.S. Dist. LEXIS 27031 (D. Del. May 20, 2002) (granting debtor's motion for an order under sections 105(a) and 363 of the Bankruptcy Code authorizing the sale of substantially all of the debtors' assets, free and clear of liens, claims, interests and encumbrances); <u>In re First Merchants Acceptance Corp.</u>, 1997 Bankr. LEXIS 1492 (Bankr. D. Del. Sept. 11, 1997) (approving the debtors' sale of the assets free and clear of all liens, claims, and encumbrances pursuant to sections 105(a) and 363(b) of the Bankruptcy Code). Accordingly, an order under section 105(a) of the Bankruptcy Code is appropriate "to carry out" the provisions of section 363(b) of the Bankruptcy Code.

26.    For the reasons described in this Wind-Down Motion, based on the Debtors' business judgment, a sound business purpose exists to discontinue the Debtors' scheduled passenger flight operations and take all necessary or appropriate actions in furtherance thereof to, among other things, preserve and maximize the value of their assets for the benefit of all of their creditors.  Given the current financial state of the Debtors' passenger operations, limited cash resources and projected cash burn, the Debtors' scheduled passenger flight operations must be discontinued immediately.

## Reservation of Rights

27.    Nothing contained herein is intended or shall be construed as: (a) an admission as to the validity, priority, or nature of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) an implication or admission that any particular claim against the Debtors would constitute a claim described herein; or (d) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code.

## Waiver of Stay

28.    Because the Debtors' estates could suffer extreme harm by any delay in the discontinuation of the Debtors' scheduled passenger flight operations, the Debtors seek to commence the requested discontinuation immediately upon the entry of the order approving this Wind-Down Motion. Accordingly, the Debtors hereby request that the Court, in the discretion provided to it under Rule 6004(g) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),[5] waive the ten-day stay of the order approving this Wind-Down Motion arising under such Bankruptcy Rule. The Debtors submit that the exigency of their present circumstances, described in detail above, warrants a waiver of the stay imposed by Bankruptcy Rule 6004(g). See, In re Decora Indus., Inc., Case No. 00-4459 (JJF), 2002 WL 32332749, at *9 (D. Del. May 20, 2002) (waiving the 10-day stay

---

[5] Bankruptcy Rule 6004(g) provides that, "an order authorizing the use, sale, or lease of property under than cash collateral is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise."

imposed by Bankruptcy Rule 6004(g)); In re Chi-Chi's, Inc., Case No. 03-13063 (JLP), 2004 WL 2848901, at *3 (Bankr. D. Del. Dec. 6, 2004) (same).

**WHEREFORE**, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as Exhibit "B"; (a) granting this Wind Down Motion; (b) authorizing the Debtors to discontinue scheduled flight

INTENTIONALLY LEFT BLANK]

operations and to take all actions necessary to effectuate such discontinuation; and

(c) granting such other and further relief as this Court deems just and proper.

DATED: Honolulu, Hawaii, March 30, 2008.

> BERGER SINGERMAN, P.A.
> 200 South Biscayne Blvd., Suite 1000
> Miami, Florida 33131
> Telephone: (305) 755-9500
> Facsimile: (305) 714-4340
>
> /s/ Paul Steven Singerman
> Paul Steven Singerman
> Florida Bar No. 378860
> singerman@bergersingerman.com
> Jordi Guso
> Florida Bar No. 863580
> jguso@bergersingerman.com
> Brian G. Rich
> Florida Bar No.38229
> brich@bergersingerman.com
>
> and
>
> DAVID C. FARMER ATTORNEY AT LAW LLLC
> David C. Farmer
> Hawaii Bar No. 3946
> 225 Queen Street, Suite 15A
> Honolulu, HI 96813-4639
> Telephone: (808) 222-3133
> Facsimile: (808) 529-8642
> E-Mail: farmerd001@hawaii.rr.com
> Co-Counsel to the Debtors

# EXHIBIT "A"

*Declaration of Jeffrey R. Kessler in Support of the Wind-Down Motion*

BERGER SINGERMAN, P.A.
Paul Steven Singerman  FL Bar No. 378860
Jordi Guso FL Bar No. 863580
Brian G. Rich  FL Bar No. 38229
200 South Biscayne Blvd., Suite 1000
Miami, Florida 33131
Telephone:  (305) 755-9500
Facsimile:  (305) 714-4340
E-Mail: singerman@bergersingerman.com
        jguso@bergersingerman.com
        brich@bergersingerman.com

DAVID C. FARMER ATTORNEY AT LAW LLLC
David C. Farmer    3946
225 Queen Street, Suite 15A
Honolulu, HI 96813-4639
Telephone: (808) 222-3133
Facsimile: (808) 529-8642
E-Mail: farmerd001@hawaii.rr.com

Co-Counsel to the Debtors

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF HAWAII**

| | | |
|---|---|---|
| In re: | ) | Case No. 08-00337 |
| | ) | (Chapter 11 Cases) |
| ALOHA AIRLINES, INC., | ) | (Jointly Administered) |
| a Delaware corporation, et al., [1] | ) | (Honorable Lloyd King) |
| | ) | |
| Debtors. | ) | |
| | ) | |
| This document relates to: | ) | |
| | ) | |
| ALL CASES | ) | |
| | ) | |

---

[1] The last four digits of the taxpayer identification number for each of the debtors follows in parentheses: (a) Airgroup (9996); (b) Aloha (4888); and (c) Acquisition (8526). The address for all Debtors is 500 Two Waterfront Plaza, 500 Ala Moana Boulevard, Honolulu, Hawaii.

1011871-1

## DECLARATION OF JEFFREY R. KESSLER IN SUPPORT OF WIND-DOWN MOTION

JEFFREY R. KESSLER declares, under penalty of perjury, that:

1.     I am the Senior Vice President of Finance, Chief Financial Officer and Treasurer of Aloha Airlines, Inc. ("Aloha") and Aloha Airgroup, Inc. ("Airgroup").  Airgroup and Aloha, together with Airgroup Acquisition Corp. ("Acquisition") are referred to herein, collectively, as the "Debtors" or the "Companies."

2.     I make the following statements in support of the *Emergency Motion Of The Debtors For An Order Authorizing Debtors To Discontinue Their Scheduled Flight Operations And Take Certain Actions In Connection Therewith* (the "Wind-Down Motion").[2]    Except as otherwise indicated, all of the facts set forth in this declaration are based upon my personal knowledge and my review of relevant documents of the Debtors.   I am competent to testify to the matters herein set forth and if called upon to do so, I could and would testify to the facts set forth herein.

3.     I am the Senior Vice President of Finance and Chief Financial Officer of Airgroup and Aloha.

---

[2] . Capitalized terms used in this Declaration and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

4. In my current position, I oversee the financial management activities of Airgroup and Aloha and a workforce of approximately 80. I joined Airgroup and Aloha on June 6, 2005 as Chief Financial Officer. I worked extensively with the Debtors during the Prior Cases (as such term is defined herein) and assisted in the successful confirmation of the Prior Plan (as such term is defined herein).

5. I hold a Masters of Business Administration in Finance and a Bachelors in Business Administration in Accounting (*magna cum laude*) from Temple University. I am a Certified Turnaround Professional and a Certified Insolvency and Restructuring Advisor.

6. Prior to joining Airgroup and Aloha, I was a partner with Tatum CFO Partners, LLP in the Atlanta, Georgia office's restructuring practice. I have over 24 years of financial operations experience focused primarily on troubled companies and bankruptcy cases. In the numerous matters I have worked on, I have, among other things, evaluated current operations and financial performance, developed and evaluated various scenarios, and developed and implemented restructuring plans. Over the last two decades, I have worked on diverse projects involving the restructuring of distressed companies, mergers and acquisitions, and administering sale and wind-down activities.

7. On December 30, 2004, Airgroup and Aloha filed petitions for relief under Chapter 11 of the Bankruptcy Code in this Court and their cases were jointly administered under Case Number 04-03063 before the Honorable Robert J. Faris (the "Prior Cases" or "Aloha I").

8. On November 29, 2005, the Court entered an order (the "Confirmation Order") confirming the joint plan of reorganization proposed by Airgroup and Aloha and Yucaipa Corporate Initiatives Fund I, L.P. (the "Prior Plan"). The effective date of the Prior Plan occurred on February 17, 2006 (the "Effective Date").

9. On March 20, 2008 (the "Petition Date"), the Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code.

10. On March 28, 2008, the office of the United States Trustee appointed an official committee of unsecured creditors.

11. The Debtors continue to operate and manage their businesses, as debtors-in-possession, pursuant to Bankruptcy Code §§ 1107 and 1108, subject of course to the Wind-Down Motion and relief requested therein.

12. Airgroup, a Hawaii corporation, is the parent and sole shareholder of Aloha, a Delaware corporation. Aloha operates commercial

air transportation services based in the State of Hawaii. The Companies have a total of approximately 3,550 employees.

13. Aloha currently serves five (5) destinations within the State of Hawaii (Honolulu, Lihue, Kahului, Kona, and Hilo), and six (6) destinations on the United States mainland (Oakland, Orange County, Sacramento, Reno, Las Vegas, and San Diego).

14. In addition to passenger transportation, Aloha also provides cargo transportation services (the "Air Cargo Business") and aviation contract services to various other airlines. The Air Cargo Business handles 85% of the cargo traffic in the State of Hawaii, including a major contract with the US Postal Service to carry mail among the Hawaiian islands. The Air Cargo Business is the easily the most profitable of Aloha's four business segments, and has generated (unaudited) earnings before interest, taxes, depreciation and amortization (EBITDA), after allocated general and administrative expenses, of more then $6 million in recent years.

15. In the Aloha I Cases, the Debtors achieved a comprehensive operational and financial restructuring that included the elimination of over $100,000,000 in annual operating expense, the restructuring of substantially all their material contracts, and a

recapitalization of their capital structure through new debt and equity financing. The Debtors emerged from the Aloha I Cases as a stronger, leaner and better capitalized enterprise.

16. Many of the objectives the Debtors set in the Aloha I Cases were achieved. However, following emergence two factors continued to put strain on the Debtors' cash flow and operations: (a) the irrational – and the Debtors submit unlawful – fare war initiated by Mesa Airlines, Inc. intended to destroy Aloha, and (b) the unprecedented increase in fuel prices. The first has had a dramatic impact on the Aloha's inter-island passenger revenue. The second has dramatically increased operating expenses at a time when air fares could not be increased. As such, the requested relief in the Wind-Down Motion is now an unfortunate necessity.

17. The Debtors elected to commence these cases to achieve two principal goals: (a) preserve the value of their assets for the benefit of all constituencies with as little disruption as is possible to Aloha's valued customers; and (b) commence a process for an orderly sale or disposition of the airline as a whole or its four discrete business segments: inter-island passenger service, trans pacific passenger service, inter-island cargo, and contract services.

18.    The Debtors have been engaged in good faith, extensive arms' length negotiations with a number of parties regarding a sale, refinancing or transaction involving some or all of their assets or business segments.  In addition to the exhaustive sale process to which the Debtors' assets were put in the Prior Case, the Debtors have conducted a thorough sale process prior to the Petition Date, in an effort to sell and realize Aloha's value. These efforts were conducted by the Company, directly, by Yucaipa, and by investment bankers.  None of these efforts, unfortunately, generated an executed definitive agreement providing for such a transaction.

19.    In the absence of a definitive agreement, the Debtors must discontinue passenger flight operations in order to avoid incurring administrative expenses attendant to the continued operations of scheduled passenger service without sufficient cash to fund such operations.

20.    The necessity to discontinue scheduled passenger flight operations has been precipitated by the Debtors' foundering cash position and the expected cash burn from continued operations, and their inability to secure the necessary investment in, or purchase of, the Debtors' passenger business on a going concern basis at a price and on terms that maximize value to the Debtors' estates.  Under the circumstances, based on the Debtors' business judgment, discontinuing their scheduled passenger flight

operations will allow for an orderly disposition of the assets of the Debtors' estates, and thus maximize any potential recovery to creditors.

21.     Notwithstanding the cessation of passenger service, the Debtors plan to continue operations of their Air Cargo and Contract Services segments, both of which continue to be profitable and both of which are subject of continued *bona fide* purchase offers.

22.     The relief requested in the Wind-Down Motion is in the best interest of the estates and their creditors.

23.     The relief requested in the Wind-Down Motion is supported by GMAC Commercial Finance, LLC, the Debtors' senior secured lender.

24.     This concludes my declaration.

## 28 U.S.C § 1746 Declaration

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 30th day of March, 2008.

/s/ Jeffrey R. Kessler
JEFFREY R. KESSLER

# EXHIBIT "B"

Proposed Order

BERGER SINGERMAN, P.A.
Paul Steven Singerman FL Bar No. 378860
Jordi Guso FL Bar No. 863580
Brian G. Rich FL Bar No. 38229
200 South Biscayne Blvd., Suite 1000
Miami, Florida 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
E-Mail: singerman@bergersingerman.com
        jguso@bergersingerman.com
        brich@bergersingerman.com

DAVID C. FARMER ATTORNEY AT LAW LLLC
David C. Farmer   3946
225 Queen Street, Suite 15A
Honolulu, HI 96813-4639
Telephone: (808) 222-3133
Facsimile: (808) 529-8642
E-Mail: farmerd001@hawaii.rr.com

Co-Counsel for the Debtors

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re: | ) | Case No. 08-00337 |
| | ) | (Chapter 11 Cases) |
| ALOHA AIRLINES, INC., | ) | (Jointly Administered) |
| a Delaware corporation, et al.,[1] | ) | (Honorable Lloyd King) |
| | ) | |
| Debtors. | ) | |
| _____ | ) | Related Docket No. _____ |
| This document relates to: | ) | |
| | ) | |
| ALL CASES | ) | |
| _____ | ) | |

---

[1] The last four digits of the taxpayer identification number for each of the Debtors follows in parentheses: (a) Airgroup (9996); (b) Aloha (4888); and (c) Acquisition (8526). The address for all Debtors is 500 Two Waterfront Plaza, 500 Ala Moana Boulevard, Honolulu, Hawaii.

## ORDER AUTHORIZING DEBTORS TO DISCONTINUE THEIR SCHEDULED FLIGHT OPERATIONS AND TAKE CERTAIN ACTIONS IN CONNECTION THEREWITH

This matter coming before the Court on the *Emergency Motion Of Debtors For An Order Authorizing Debtors To Discontinue Their Scheduled Flight Operations and Take Certain Actions In Connection Therewith; and Declaration of Jeffrey R. Kessler* (the "Wind-Down Motion")[2] of the above-captioned debtors (collectively, the "Debtors") for the entry of an order pursuant to sections 105(a) and 363 and 1113(e) of title 11, United States Code (the "Bankruptcy Code") authorizing the Debtors to discontinue their scheduled passenger flight operations and take certain actions in connection. The Court, having reviewed the Wind-Down Motion, and having heard the statements of counsel and evidence adduced with respect to the Wind-Down Motion at a hearing before the Court on the Wind-Down Motion (the "Hearing"); and after due deliberation the Court having determined that good and sufficient cause having been shown;

### THE COURT HEREBY FINDS AND DETERMINES THAT:

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

---

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

B.     To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     The Court has jurisdiction over the Wind-Down Motion and the discontinuation of the Debtors' scheduled passenger flight operations pursuant to 28 U.S.C, §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M). Venue of these cases and the Wind-Down Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

D.     The statutory predicates for the relief sought in the Wind-Down Motion are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by Bankruptcy Rules 2002 and 6004.

E.     As evidenced by the affidavits of service filed with the Court, (i) proper, timely, adequate and sufficient notice of the Wind-Down Motion and the Hearing has been provided in accordance with Bankruptcy Rules 2002(a) and 6004(a), (ii) such notice was good and sufficient, and appropriate under the particular exigent circumstances and (iii) no other or further notice of the Wind-Down Motion and the Hearing is or shall be required.

F.     The Debtors' current cash and financial position supports the immediate discontinuation of the Debtors' scheduled passenger flight operations.

G.     Approval of the discontinuation of the Debtors' scheduled passenger flight operations is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

H.     The Debtors have demonstrated a good, sufficient, and sound business purpose and justification for the discontinuation of their scheduled passenger flight operations and taking certain actions in connection therewith.

I.     The Debtors have articulated good and sound business reasons for waiving the stay otherwise imposed by Bankruptcy Rule 6004(g).

**IT TS HEREBY ORDERED THAT:**

1.     The Motion is **GRANTED** as provided herein.

2.     The discontinuation of the Debtors' scheduled passenger flight operations is hereby approved, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. The Debtors, and their directors, officers, employees, professionals and other agents, are authorized, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and without further relief from the Court, to take any and all actions that are necessary or appropriate in the exercise of their business judgment to discontinue the Debtors passenger operations and to wind-down the Debtors' affairs.

3.    The terms and provisions of this Order shall be binding in all respects, and shall inure to the benefit of, the Debtors, their estates, creditors and interest holders and their respective affiliates, successors and assigns.

4.    The stay of this Order imposed by Bankruptcy Rule 6004(g) is hereby waived.

5.    This Court retains jurisdiction over any and all matters or disputes with respect to any of the relief granted in this Order.

DATED:  Honolulu, Hawaii, _____.


_____
HONORABLE LLOYD KING
UNITED STATES BANKRUPTCY JUDGE