WAGNER CHOI & VERBRUGGE
James A. Wagner
Chuck C. Choi
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Tel: (808) 533-1877
Fax: (808) 566-6900
E-mail: jwagner@wcelaw.com

Counsel to the Trustee

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF HAWAII**

| | |
|---|---|
| In re<br><br>ALOHA AIRLINES, INC., a Delaware corporation, et al.,<br><br>Debtors<br><br>This Document relates to: All Cases | Case No. 08-00337<br>(Chapter 7 Cases)<br>(Jointly Administered)<br><br>DATE: May 12, 2008<br>TIME: 2:00 p.m.<br>JUDGE: Hon. Lloyd King |

**ORDER (A) CONFIRMING SALE OF DEBTORS' AIR CARGO ASSETS PURSUANT TO 11 U.S.C. § 363 FREE AND CLEAR OF LIENS, CLAIMS ENCUMBRANCES AND INTERESTS AND (B) APPROVING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS UNDER 11 U.S.C. § 365**

IN ACCORDANCE with this Court's *Findings of Fact and Conclusions of Law on Emergency Motion For Entry of Order (A) Approving Sale of Debtor's Air Cargo Assets and (B) Approving Assumption and Assignment of Executory Contracts to Saltchuk Resources, Inc.* of even date herewith, the Court

1083481-4

NOW, THEREFORE, ORDERS, ADJUDGES AND DECREES AS FOLLOWS:

A. Under the exigent circumstances as stated on the record, notice of the Sale Hearing is hereby reduced pursuant to Rule 9006(c)(1) of the Federal Rules of Bankruptcy Procedure, and Section 105(a) of the Bankruptcy Code.

B. The *Trustee's Motion for Entry of Order (A) Approving Sale of Debtors' Air Cargo Assets and (B) Approving Assumption and Assignment of Executory Contracts to Saltchuk Resources, Inc.*, filed May 2, 2008 (the "Sale Motion") [D.E. #393] is granted in all respects. Reference is further made to the *Order Authorizing (I) Trustee to Operate Air Cargo Business Pursuant to 11 U.S.C. § 721, (II) Advance of Funds for Trustee's Administration of Estates and for Benefit of Unsecured Creditors, and (III) Postpetition Advances to Maintain Business Operations of Air Cargo Business Through Sale Closing.*, entered May 2, 2008 (the "721 Order") [D.E. #390].

C. The proposed Asset Purchase Agreement and the Schedules thereto, as modified by this Order and as may be further modified prior to the closing (the "Sale Documents"), are approved in all respects. The Trustee and the parties to the Sale Documents are authorized and directed to undertake each of the transactions authorized by the Sale Documents and this Order (the "Sale"), and the Trustee is hereby authorized to consummate the Sale of the assets which comprise

the Debtors' air cargo transportation services business (the "Air Cargo Assets") pursuant to the Sale Documents. The Trustee is sometimes also referred to as the "Seller" in this Order. In addition, the Trustee is authorized to perform, execute and deliver (without requiring any further notice to any party or further approval by the Bankruptcy Court) any and all such further acts, agreements and any other documents whatsoever as may be necessary or desirable in connection with the consummation of the Sale of the Air Cargo Assets and/or the assumption and assignment of the Assumed Contracts.

D. All objections to the Sale of the Air Cargo Assets were resolved and withdrawn or overruled as announced on the record at the Sale Hearing.

E. Except as provided in the Sale Documents, pursuant to Section 363(b) and (f) of the Bankruptcy Code, the Air Cargo Assets are hereby sold and transferred to Aeko Kula, Inc., the nominee of Saltchuk Resources, Inc. (the "Buyer") free and clear of any and all liabilities, encumbrances, interests, or claims whether or not allowable (as such terms are defined in the Bankruptcy Code), title retentions, charges, and any other interest in such Air Cargo Assets of an entity other than Seller's estate, and free and clear of all liens, security interests of GMAC Commercial Finance, LLC's ("GMAC")and Yucaipa Corporate Initiative Fund I, L.P. (collectively, "Encumbrances"), provided however, Pratt & Whitney JT8D-17 Engine Serial Number 688665 shall be sold subject to (and not free and

3

clear of) the lien of the mortgage created by the certain Engine Mortgage and Security Agreement (Lease Agreement N742AS) relating thereto, in favor of KP Aviation. All such Encumbrances, if any, shall attach to the proceeds of the Sale, with the same priority, validity, force and effect as they now have against the Air Cargo Assets. Notwithstanding the above, the accounts receivable included in the Sale of the Air Cargo Assets, including without limitation accounts receivable from the United States government and accounts arising from interline passenger, interline freight, non-transportation and UATP transactions customarily settled between Seller and the account debtors through Airlines Clearing House, Inc., shall be sold subject to and not free and clear of any offset or recoupment right against such account receivable; provided, further, that (i) if such a claim of offset or recoupment is asserted against an account receivable included in the Sale of the Air Cargo Assets: (a) Buyer, the Trustee and GMAC shall be given written notice of such claim of offset or recoupment (such written notice shall be given to the other parties by the party that first receives notice from the account debtor), and Buyer *and the Trustee* in consultation with GMAC and subject to GMAC's written consent, which consent shall not be unreasonably withheld, shall be entitled to defend, reconcile and/or settle any such claim; and (b) upon completion of such reconciliation, by final order or mutually agreed settlement, GMAC will refund to Buyer the applicable percentage of the purchase price (e.g., 95%, 85% or 75%) allocable to

4

the amount of such reconciled offset or recoupment with any such amounts refunded by GMAC being added back to the indebtedness due GMAC by the Debtors; and (ii) if any account receivable included in the Sale of the Air Cargo Assets arises under an Interline Agreement (as hereinafter defined) that is assigned to any assignee other than Buyer (an "Other Assignee"), or if any Interline Agreement designated as an Assumed Contract is the source of any account receivable assigned to an Other Assignee, then the assignment to Buyer of the applicable account receivable or Interline Agreement shall not take effect until the Other Assignee shall have agreed in writing, with notice to Buyer, the Trustee, GMAC and the affected account debtor or counterparty, that such Other Assignee will participate in and be bound by the results of the reconciliation process referred to in clause (a) above. As used in this paragraph E the term "Interline Agreement" means any agreement between Aloha Airlines, Inc. and one or more participants in Airlines Clearing House, Inc. and/or the International Air Transport Association Clearing House under which the parties had, at or prior to the Petition Date, settled their obligations to one another through one or both of such clearinghouses. Notwithstanding anything to the contrary, and for purposes of clarity, the Air Cargo Assets transferred to Buyer hereunder shall not include any airline designator codes owned or used by the Debtor or Trustee.

      F.    The provisions of this Order authorizing the Sale of the Air

5

1083481-4

Cargo Assets free and clear of Encumbrances shall (i) be self-executing and shall constitute a satisfaction and release of all liens, claims, interests, charges and encumbrances on the Air Cargo Assets. Neither the Trustee nor Buyer shall be required to execute or file releases, termination statements, assignments, consignments, or other instruments in order to effectuate, consummate and implement the foregoing provisions; provided, however, that this decretal paragraph shall not excuse such parties from performing any and all of their respective obligations under this Order. Notwithstanding the foregoing, and subject to the limitations set forth in paragraph C herein, the Trustee is authorized and directed to execute all documents required by, or related to, the Sale of the Air Cargo Assets, including but not limited to, assignment and transfer documents that may be required by various governmental entities to effectuate the transfer to Buyer of all licenses, permits, approvals, and rights relating to the Air Cargo Assets. Buyer is further authorized to execute and file such additional statements, instruments, releases or other documents as are necessary or commercially reasonable to discharge liens recorded on public records.

G. All executory contracts and unexpired leases (the "Assumed Contracts") acquired by Buyer will be assigned pursuant to section 365 of the Bankruptcy Code and Buyer has provided adequate assurance of future performance of the Assumed Contracts. Until the closing of the Sale (the

"Closing") occurs, the terms of the Assumed Contracts being transferred to Buyer shall remain in full force and effect. The amounts required to cure defaults under all Assumed Contracts being assumed by Buyer at Closing through the Closing Date shall be paid by the Trustee from the proceeds of the Sale of the Air Cargo Assets at Closing and in the amounts set forth on <u>Exhibit A</u> attached hereto and made a part of this Order (the "Cure Amounts"), (including with respect to the netting of deposits (which shall remain the property of the Debtors and the collateral of GMAC) against the Cure Amounts (which shall be paid by the Trustee) so that to the extent that the deposits are less than the Cure Amounts, the Trustee shall pay the net amount to the contract counterparties, and to the extent that the deposits are more than the Cure Amounts, then the Buyer shall reimburse the Trustee for the amount of such excess (which shall be payable to GMAC) and Buyer shall be entitled to setoff against the Assumed Contract counterparty the amount paid by Buyer against any of Buyer's future obligations under the Assumed Contract to the contract counterparty) provided that to the extent <u>Exhibit A</u> reflects a disputed amount, then the Trustee is directed to pay the undisputed amount and to retain in escrow the amount in dispute, pending resolution of such dispute. Buyer shall be liable to make payment and render performance in respect of all obligations under the Assumed Contracts, but only to the extent of such amounts arising or accruing from and after the Closing ("Ongoing Contract

7

Obligations"). Notwithstanding the foregoing, if with respect to any Assumed Contract identified in the final Sale Documents, the Trustee has not given each counterparty to such Assumed Contract notice of the proposed assumption and assignment of such Assumed Contract at least ten (10) days prior to the Sale Hearing, the Trustee shall, as soon as practicable following entry of this Order, give each such counterparty notice that it may, within ten (10) days after issuance of such notice, file and serve an objection to the assumption and assignment of its Assumed Contract, or to the related Cure Amount set forth on Exhibit A. The assumption and assignment of any such Assumed Contract shall take effect only upon expiration of the objection period, if the counterparty does not file and serve an objection, or at such later time as any objection is resolved in a manner that permits the assumption and assignment of the Assumed Contract to take effect.

H. Except as otherwise expressly provided in the Sale Documents, Buyer is not assuming nor shall it become liable, obligated or responsible for any of Seller's liabilities as successor or otherwise. Consequently, after closing of the Sale to Buyer, all creditors of the Seller, whether known or unknown, are hereby enjoined from asserting or prosecuting any claim or cause of action against Buyer or the Air Cargo Assets to recover on account of any liability owed by Sellers.

I. Seller shall pay all Cure Amounts in connection with the assignment to Buyer of the Assumed Contracts, including without limitation the

8

1083481-4

full cure of (a) Seller's contract with the U.S. Postal Service ("Postal Contract"), AMT-2006-23-AQ, provided however, that the assumption and assignment of the Postal Contract to Buyer shall not be effective without the express written consent of the United States; and (b) the repair and refurbishment costs under the workscope covered by outstanding and open work orders on Boeing Aircraft 737-210C, tail number N834NL, s/n 20017, currently located in Costa Rica, and costs associated with the transport of such aircraft to Honolulu, Hawaii.

J. In the event that Seller or Buyer fails to close by the Closing Date specified in the Sale Documents, the Court shall determine Buyer's, Seller's and/or GMAC's rights to the Deposit as set forth in the LOI, or if executed, the Sale Documents.

K. The Sale Documents and related documents may be modified, amended or supplemented by the parties thereto without further order of the Court, provided that any such modification, amendment or supplement is not material and provided that no executory contract may be added to the contracts being assigned without the written consent of the counterparty to the subject executory contract or further Order of this Court.

L. This Order shall be binding upon and inure to the benefit of the Trustee, Buyer, and their respective assignees.

M. Buyer shall be and hereby is granted the protection of Section

1083481-4

363(m) of the Bankruptcy Code with respect to the Sale of the Air Cargo Assets approved and authorized herein in the event this Order or any authorization contained herein is reversed or modified on appeal.

N. The stay provisions of Rule 6004(h) of the Federal Rules of Bankruptcy Procedure are hereby waived.

O. At Closing, the Trustee is authorized and directed to use the proceeds of the Sale to (i) pay all usual and customary closing costs paid by the Seller as provided in the Sale Documents, (ii) pay all accrued and unpaid employee wages and salaries for the period between April 16, 2008 through April 29, 2008 (iii) establish an interest bearing escrow account to be used, upon Bankruptcy Court approval, to pay the Transaction Fee due to Imperial Capital, LLC pursuant to its Engagement Letter dated March 19, 2008 and this Court order dated April 7, 2008 [D.E. #203], (iv) set aside in an interest bearing account five percent (5.00%) of the proceeds, net of fees and expenses incurred in the Sale (which include without limitation those fees and expenses set forth in clauses (i), (iii) and (v) of this paragraph O and those costs set forth in paragraph I), which are distributable to GMAC resulting from the sale of the Air Cargo Assets to be used by the Trustee as set forth in the 721 Order; and (v) set aside in an interest bearing account $270,000, representing the estimated fees and costs of special counsel retained by the Trustee pursuant to the 721 Order in order to close the sale of the Air Cargo

Assets, which shall be allocated $90,000 to Berger Singerman, $105,000 to Char Sakamoto, $60,000 to Shepherd Mullin, and $15,000 to Squire, Sanders. The funds provided for in clauses (iv) and (v) of this Paragraph O shall be held in escrow pending further order of the Court. The balance of the proceeds of the Sale shall be delivered to GMAC at Closing. GMAC shall be entitled to receive and the parties shall be obligated to disburse from the proceeds of the Sale: (i) the net result of the reconciliation of accounts receivable, including with respect to the 90% estimated payment made by Buyer at Closing and any adjustments in respect of offsets or deductions allowed against accounts sold to Buyer, (ii) the net result of the reconciliation of professional fees and expenses incurred in connection with this matter from and after April 28, 2008 by the firms specified above, (iii) the amounts due in respect of the repair and refurbishment costs under the workscope covered by outstanding and open work orders on Boeing Aircraft 737-210C, tail number N834NL, s/n 20017, currently located in Costa Rica, and costs associated with the transport of such aircraft to Honolulu, Hawaii; and (iv) any fees and costs that may be awarded to Fieldstone Aviation LLC upon approval of such engagement by the Bankruptcy Court.

P. At Closing the Trustee shall be deemed to have rejected and terminated their leasehold or other possessory rights with respect the State of Hawaii facilities and facility leases, including, without limitation, all leasehold

improvements, cooling and other fixtures, which relate to space the Buyer intends to occupy and operate, so that Buyer may obtain its own leaseholds or other possessory rights thereto as of the Closing from the lessors thereof.

Q. The Trustee is hereby authorized to continue to operate the Debtors' air cargo transportation services business to and including May 15, 2008 solely for the purpose of consummating the Sale upon the written consent of GMAC which GMAC may withhold in its sole and absolute discretion.

R. This Court shall retain jurisdiction over the parties for the purpose of: (i) resolving any disputes arising under or related to the Sale Documents; (ii) compelling delivery of the Air Cargo Assets to Buyer (following the Closing and full payment of the Purchase Price); (iii) protecting Buyer, or the Air Cargo Assets, against any liens or claims of any kind arising by, through or under the Seller (other than the Ongoing Contract Obligations), after the transfer of Air Cargo Assets to Buyer; (iv) resolving any disputes between Buyer, Other Assignees or the Interline Agreement parties arising from the reconciliation of any account receivable sold as part of the Air Cargo Assets and/or that arises under an Interline Agreement; and (v) otherwise enforcing the terms and provisions of this Order and the Sale Documents.

MAY 1 3 2008

_____
United States Bankruptcy Judge

Schedule
Cure Amounts

| No. | Contract | Cure |
|---|---|---|
| **737-200 AIRCRAFT LEASES** | | |
| 1 | Aircraft Lease Agreement dated as of December 5, 2007 between KP Aviation, Inc. and Aloha Airlines, Inc., and related documents (N826AL).[aSEE COMMENTS BELOW] | $157,500.00 |
| 2 | Aircraft Lease Agreement dated as of October 3, 2006 between BCI Aloha 2006-1, LLC and Aloha Airlines, Inc., as amended and assigned, and related documents (N840AL) [bSEE COMMENTS BELOW] | $170,000.00 |
| 3 | Aircraft Lease Agreement dated as of October 30, 2006 between BCI Aloha 2006-1, LLC and Aloha Airlines, Inc., as amended, and related documents (N841AL). [cSEE COMMENTS BELOW] | $160,000.00 |
| 4 | Aircraft Lease Agreement dated as of September 21, 2007 between KP Aviation, Inc. and Aloha Airlines, Inc., and related documents (N842AL). [dSEE COMMENTS BELOW] | $123,700.00 |
| **CARGO CUSTOMER CONTRACTS** | | |
| 5 | Order/Solicitation/Offer/Award Contract/Order No. AMOT-2006-23-AQ effective as of January 28, 2006. | $63,961.92 |
| **TRANS EXECUTIVE AIRLINES** | | |
| 6 | Aircraft Charter Agreement dated as of February 29, 2008 between Trans Executive Airlines of Hawaii, Inc. and Aloha Airlines, Inc. | $461,260.00 |

---

[a] This amount will be prorated as of the Closing Date between the Estate and Aeko Kula, Inc.
[b] This amount will be prorated as of the Closing Date between the Estate and Aeko Kula, Inc.
[c] This amount will be prorated as of the Closing Date between the Estate and Aeko Kula, Inc.
[d] This amount will be prorated as of the Closing Date between the Estate and Aeko Kula, Inc.