Of Counsel:
ASHFORD & WRISTON
A Limited Liability Law Partnership LLP

CUYLER SHAW     1413-0
MIRANDA TSAI    8308-0
Alii Place, Suite 1400
1099 Alakea Street
P.O. Box 131
Honolulu, Hawaii 96810
Telephone: (808) 539-0400
Email: cshaw@awlaw.com, mtsai@awlaw.com

Attorneys for
 THE STATE OF HAWAII

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>ALOHA AIRLINES, INC., ET AL.<br><br>Debtors. | ) CASE NO. 08-00337<br>) (Chapter 7)<br>) (Jointly Administered)<br>)<br>) DATE:<br>) TIME:<br>) JUDGE: The Honorable Lloyd King<br>) |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL SURRENDER OF PASSENGER OPERATIONS SPACES AND FOR PAYMENT OF RENT**

The State of Hawaii ("State"), by and through its attorneys, Ashford & Wriston LLP, submits this memorandum in support of its *Motion to Compel Surrender of Passenger Operations Spaces at Airports And For Payment of Rent.*

The Chapter 7 Trustee, Dane Field, is occupying all or most of the space formerly

used for Aloha Airlines, Inc.'s ("Aloha") passenger operations at the State's various airports notwithstanding the fact that Aloha ceased passenger flights on March 31, 2008. The Trustee has failed to pay any rent for occupancy of the space. The State is requesting that the Court compel the immediate surrender of Aloha's passenger operations spaces and the immediate payment of all post-petition rents.

## I. FACTUAL BACKGROUND

Debtor Aloha Airlines, Inc. ("Aloha") rented space at the State's principal airports for use by its contract services, cargo and passenger service divisions. The rental arrangements were evidenced by airport-airline leases, revocable permits and parking permits. On March 20, 2008, Aloha filed a petition under Chapter 11 of the Bankruptcy Code.

On March 31, 2008, Aloha discontinued its inter-island and trans-pacific passenger flight operations. Subsequently, on April 29, 2008, Aloha converted to a Chapter 7 bankruptcy. Dane Field was appointed the Interim Chapter 7 Trustee (the "Trustee") of Aloha's bankruptcy estate (the "Estate") on April 30, 2008.

On May 2, 2008, the Court modified the automatic stay to permit the State to terminate the permits renting the airport spaces formerly used by Aloha for its passenger services operations. By notice issued to the Trustee on May 8, 2008 the

506832.03

2

State terminated Aloha's passenger services space permits effective as of May 15, 2008. See Exhibit "A" to Declaration of W. Ross Smith ("Smith Declaration").

## II. AIRPORTS HAS MADE REPEATED EFFORTS TO OBTAIN RETURN OF ALOHA'S PASSENGER SERVICE SPACE

Despite the fact that Aloha ceased passenger operations on March 31, 2008, despite the fact that after March 31, 2008, Aloha no longer needed the ticket counters, baggage handling areas and ramp space which it used to support its passenger service, and despite repeated demands by the State's Airports Division ("Airports") for return of the space, Aloha was still refusing to return the space to Airports as of April 30, 2008, the date on which Mr. Dane Field was appointed Aloha's Chapter 7 trustee.

By letter dated May 2, 2008[1], Airports' counsel notified the Trustee that the bankruptcy court had, on May 2, 2008, entered an order modifying the automatic stay to permit Airports to take back the space that Aloha had previously used for its passenger flight operations – both interisland and transpacific. The Trustee was informed that immediately after the cessation of flight operations on March 31, 2008, Airports had made repeated requests to Aloha (Stephanie Ackerman) for return of Aloha's passenger service space because the space was urgently needed by other carriers who were carrying Aloha's former passengers. Airports reminded

---

[1] A copy of the May 2, 2008 letter is attached as Exhibit "A" to the Declaration of Cuyler Shaw filed of even date herewith.

506832.03

3

the Trustee that more than a month had passed since the cessation of Aloha's passenger flights and that the space used to support such flights had still not been returned to the State. Airports emphasized that there remained an urgent need to reassign the space to other airlines and reiterated its request for immediate return of the space. Airports acknowledged that the Trustee might need to retain limited space to store furniture and equipment for ultimate sale.

On May 6, 2008, the Trustee's counsel responded[2] acknowledging "the urgency" of returning the space, offering to work with the State to free up the space, but noting that nothing could be done immediately because Aloha had installed costly improvements in certain spaces.

On May 15, 2008, Airports' counsel again wrote to the Trustee's counsel[3] complaining that despite the passage of an additional ten days, "as far as we can determine, nothing is being done to return this space to Airports." Airports' counsel noted that he had talked with Marty McClain, the proposed auctioneer, and that Mr. McClain did not see any reason why most of Aloha's passenger service space could not be immediately returned to Airports. Counsel requested a meeting with the Trustee to agree on a schedule for return of the space.

---

[2] A copy of Trustee counsel's response is attached as Exhibit "B" to the Shaw Declaration.

[3] A copy of the May 15, 2008 email communication is attached as Exhibit "C" to the Shaw Declaration.

506832.03

4

On May 19, 2008, Ross Smith, Airports' Property Management Supervisor, and Airports' counsel met with Stephanie Ackerman, Devon Shishido, the Trustee and the Trustee's counsel to discuss a prompt surrender of Aloha's passenger service space at the State's various airports. It was agreed that the Trustee would promptly remove all personal property from Aloha's passenger service space at all neighbor island airports (Airports was informed at the meeting that Saltchuk had agreed with the Trustee to transport such property to Honolulu free of charge) and that the neighbor island airport space would be surrendered Airports within two weeks of the date of the meeting. The Trustee or his representative also represented to the State that an auction of Aloha's furniture, equipment and other properties stored at Honolulu International Airport ("HNL") would be conducted by auctioneer Marty McClain most probably during the first week of June, thereby enabling the Trustee to return Aloha's flight passenger service spaces at HNL. Smith Declaration at paragraph 4. As of the date hereof, no space has been returned and as far as the State knows, no definite date or date(s) for a Honolulu auction of property stored at HNL has been set.

Subsequent to May 19, 2008, Airports' counsel forwarded two separate proposed stipulations between Airports and the Trustee under which Aloha would surrender all passenger service space to Airports immediately with Aloha retaining, however, limited space, within which it could store furniture, equipment and other

506832.03

5

property to be sold at auction by Mr. McClain or other auctioneer. To date, no proposed revisions or comments to any of the proposed stipulations have been received from the Trustee's counsel. Trustee's counsel did indicate that the Trustee was delayed because Stephanie Ackerman was preparing maps to attach to the stipulation showing which space was to be surrendered immediately and which space was to be retained until after the auctions. Airports recently reported that it has been contacted by Ackerman and asked to prepare maps of the Aloha passenger operations.

As of the date hereof, the Trustee refuses to surrender the passenger service space to Airports. Neither has the Trustee paid any rent for this space which the Trustee claims he needs to store property of the estate for ultimate sale.

## III. ARGUMENT

### A. This Court Should Confirm the State's Right Under the Revocable Permits Issued to Aloha to Remove All Personal Property of the Estate From the Premises and To Take Back Possession of Aloha's Passenger Service Space.

Most of the revocable permits issued by Airports granting Aloha use of passenger service space at the State's various airports state:

> Should the PERMITTEE fail to vacate the Premises upon the revocation of the Permit, the Director of Transportation, his agents and/or representatives may enter upon the Premises and remove and dispose of, at PERMITTEE's cost and expense, all vehicles, equipment, materials and/or any personal property remaining on the Premises, and the PERMITTEE agrees to pay for all such costs and expenses of removal and disposition.

506832.03

6

The balance of such revocable permits provide:

> The PERMITTEE shall have the right at its own expense to remove any and all fixtures and equipment installed by it on the Premises, provided that (a) PERMITTEE shall give five (5) days' prior written notice of its intention to remove such fixtures and equipment, (b) the removal shall be completed during the time PERMITTEE occupies the Premises and at a time PERMITEE is current in the payment of rent and is in compliance with all other obligations under the Permit, . . . . The PERMITTEE's failure to give such written notice shall be deemed to be a waiver of the right of removal and shall constitute an abandonment of such fixtures and equipment.

True and correct copies of the permits are attached as Exhibits "B" and "C" to the Smith Declaration.

The automatic stay was lifted by the bankruptcy court on May 2, 2008 to terminate all permits under which Airports rented space used by Aloha's passenger service division. The order authorizes Airports to "exercise any and all rights granted it under the aforementioned revocable permits, parking permits and AIPMs." A copy of the order is attached as Exhibit "D" to the Shaw Declaration. The State has the right under the permits to remove and dispose of personal property remaining in the premises on termination of the permits. The State requests that the Court either (1) issue an order compelling Aloha to vacate its passenger service space and surrender the same to Airports, or (2) confirm the State's right to immediately re-enter such space and to remove and store all Aloha personal property remaining therein.

506832.03

## B. The Trustee Should Be Compelled To Pay Rent Until The Premises Formerly Used For Aloha's Passenger Operations Services Are Vacated and To Surrender The Premises Immediately.

The Trustee continues to occupy Aloha's passenger service space at the State's airports on the grounds that (a) Aloha has installed valuable improvements in and to the same, or (b) the space is needed to store Aloha's furniture, equipment or other personal property for ultimate sale. Under §365(d)(3), the Trustee is required to:

> timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of non-residential real property, until such lease is assumed or rejected, notwithstanding §503(b)(1) of this title.

In the Chapter 11 portion of this case, Aloha left $2,282,680.52 in trade and other creditors unpaid. See *Notice of Filing Schedules of Unpaid (Chapter 11) Debts* filed by Aloha herein on May 22, 2008. Aloha used the credit extended by these creditors -- including credit extended by the State's Airports Division for space rented by Aloha at the State's various airports – to maintain the going concern value of its cargo and contract services divisions. This effort was made by Aloha to maximize the price obtained on sale of each of such division, all for the ultimate benefit of the senior lienholder, GMAC. Now in the Chapter 7 portion of the case, the Trustee is refusing to surrender Aloha's passenger service space on the grounds

506832.03

that the same is being used to store personal property which will ultimately be sold by the Trustee at auction or otherwise – again for GMAC's benefit. Airports concedes that 5% of GMAC's net recovery from the sale of this collateral will be paid into an "Administrative Fund", but as far as the State can determine, such fund is not available to pay expenses of administering the bankruptcy estate other than professional fees and costs.[4]

In any event the State should not be placed in the position of renting space being used by the Trustee to facilitate the sale of GMAC's collateral without payment of any rent. Accordingly, the State requests that the Court enter an order compelling the Trustee to pay all post-petition rents accrued through June 30, 2008 with respect to Aloha's passenger services space, all as itemized in Exhibit "D" to the Smith Declaration.

---

[4] See Order Authorizing (I) Trustee to Operate Air Cargo Business Pursuant to 11 U.S.C. §721, (II) Advance of Funds for Trustee's Administration of Estates and for Benefit of Unsecured Creditors, and (III) Postpetition Advances to Maintain Business Operations of Air Cargo Business Through Sale Closing.

506832.03

## IV. CONCLUSION

For the reasons stated above, the State urges that the Court grant the specific relief requested by the State in each of paragraphs III.B. and C. above.

DATED: Honolulu, Hawaii; June 13, 2008.

_____
CUYLER SHAW
MIRANDA TSAI
Attorneys for
STATE OF HAWAII

506832.03

10