WAGNER CHOI & VERBRUGGE
Attorneys at Law

JAMES A. WAGNER
CHUCK C. CHOI
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Facsimile: (808) 566-6900
Email: cchoi@wcelaw.com

Counsel to Chapter 7 Trustee

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>ALOHA AIRLINES, INC., a Delaware corporation, et al.,[1]<br><br>Debtors<br><br>This Document relates to: All Cases | Case No. 08-00337<br>(Chapter 7 Cases)<br>(Jointly Administered)<br><br>Date: September 4, 2008<br>Time: 10:30 a.m.<br>Judge: Hon. Lloyd King |

## FIRST INTERIM FEE APPLICATION OF WAGNER CHOI & VERBRUGGE AS BANKRUPTCY COUNSEL FOR CHAPTER 7 TRUSTEE FOR PERIOD MAY 1 TO JULY 31, 2008; EXHIBIT "A"

Wagner Choi & Verbrugee ("Applicant"), bankruptcy counsel to Dane S. Field, the Chapter 7 Trustee (the "Trustee") for Aloha Airlines, Inc. ("Aloha"), Aloha Airgroup, Inc. ("Airgroup") and Airgroup Acquisition Corp. ("Acquisition"

---

[1] The last four digits of the taxpayer identification number for each of the debtors follows in parentheses: (a) Airgroup (9996); (b) Aloha (4888); and (c) Acquisition (8526).

60563v1

and collectively with Aloha and Airgroup, the "Debtors"), in support of its first interim fee application for the period May 1, 2008 to July 31, 2008, respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3. On March 20, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the instant cases. The Debtors operated and managed their businesses, as debtors-in-possession, pursuant to Bankruptcy Code §§ 1107 and 1108 until the cases were converted to chapter 7.

4. As of the Petition Date, virtually all of the Debtors' assets were encumbered by liens in favor of GMAC Commercial Finance, LLC ("GMAC"), Yucaipa Corporate Initiatives Fund I, LP, and Yucaipa corporate Initiatives Fund I, LLC (collectively "Yucaipa") securing amounts in excess of the value of the Debtors' assets. As a result, the Debtors' estate had no unencumbered assets or funds.

5. On March 31, 2008, the Debtors' discontinued their passenger operations. On April 28, 2008, the Debtors filed a *Notice of Conversion of Cases to Chapter 7*. On April 29, 2008, the Court entered an *Order Converting the Chapter 11 Cases of the Debtors to Cases Under Chapter 7*.

6. On April 30, 2008, the Office of the United States Trustee filed its *Notice of Appointment of Trustee*, appointing Dane S. Field to serve as Trustee for this case.

7. Pursuant to a minute order entered on May 8, 2008, the Court authorized the Trustee to employ Applicant as bankruptcy counsel effective as of May 1, 2008.

## Sale of the Air Cargo Business

8. As of the Petition Date, Aloha provided commercial air passenger service based in Hawaii. The Debtors also provided cargo transportation services (the "Air Cargo Business") and aviation contract services to various other airlines.

9. With prior approval of the Court, the Debtors advanced a process for the sale of certain of their assets, including the assets that comprise the Air Cargo Business (the "Air Cargo Assets").

10. The Debtors obtained an initial offer for the Air Cargo Assets from Saltchuk Resources, Inc. that the Debtors used to advance an auction sale (the

"Auction") pursuant to court-approved bidding procedures. The Auction of the Air Cargo Business was not successful.

11. Given the results of the Auction, the Debtors did not have enough liquidity to operate their businesses. Accordingly, on April 28, 2008, the Debtors elected to convert these cases to cases under chapter 7 of the Bankruptcy Code.

12. On May 1, 2008, the Court conducted various hearings in these cases. At the conclusion of the hearings, the Court, among other things, authorized the Trustee to continue to operate the remaining business of the Debtors, including the Air Cargo Business, and ordered the Trustee to consummate the sale of the contract services assets to Pacific Air Cargo, LLC ("Pacific Air Cargo"). The Trustee consummated the sale of the contract services assets on May 2, 2008.

13. On May 2, 2008, the Court entered its *Order Authorizing (I) Trustee to Operate Air Cargo Business Pursuant to 11 U.S.C. § 721, (II) Advance of Funds for Trustee's Administration of Estates and for Benefit of Unsecured Creditors, and (III) Postpetition Advances to Maintain Business Operations of Air Cargo Business Through Sale Closing* (the "721 Order"). The 721 Order provides, among other things, for a carve out of 5.0% of the net sale proceeds (the "Administration Fund") from the disposition of the collateral of GMAC Commercial Finance LLC ("GMAC") to pay certain fees and expenses of the Trustee as described in the 721 Order. GMAC also confirmed its obligation to

fund, as a separate carve-out, up to $250,000 of the Trustee's fees in accordance with paragraph 14 of the "Interim Financing Order" entered on April 8, 2008.

14. Applicant is informed that the Trustee is currently holding $651,922.01 in the Administration Fund.

15. On May 2, 2008, the Trustee filed his *Motion for Entry of Order (A) Approving Sale of Debtors' Air Cargo Assets and (B) Approving Assumption and Assignment of Executory Contracts to Saltchuk Resources, Inc.* (the "Cargo Sale Motion"), and his *Motion to Reject Collective Bargaining Agreements Pursuant to 11 U.S.C. § 365(a)* (the "CBA Rejection Motion").

16. On May 12, 2008, the Court approved the Cargo Sale Motion and the CBA Rejection Motion, and entered orders approving the motions on May 13, 2008, May 14, 2008, respectively.

17. The Trustee consummated the closing of the sale of the Air Cargo Assets on May 14, 2008, and most of the net proceeds of sale were wired to GMAC.

**Trustee's Efforts to Liquidate Remaining Assets**

18. On May 19, 2008, the Trustee filed his *Emergency Motion for Entry of Order Authorizing the Trustee to Reject Certain Office and Airport Leases* seeking to reject most of the Debtors' unexpired non-residential property leases. On May 29, 2008, the Court granted this motion on an expedited basis.

19. On May 21, 2008, the Trustee filed his *Motion for Entry of Order Authorizing Trustee to Retain Former Employees to Complete Liquidation Effective as of May 15, 2008* (the "Employee Leasing Motion"), seeking authority to retain certain former Aloha executives as independent consultants and to enter into an employee leasing agreement to "lease back" former Aloha employees necessary to assist the Trustee in liquidating the Debtors' remaining assets. On June 18, 2008, the Court entered an order approving the Employee Leasing Motion.

20. On May 29, 2008, the Trustee filed his *Motion for Entry of Order Authorizing Trustee to Sell Boeing Aircraft Frames Bearing FAA Registration Nos. N821AL and N807AL Free and Clear of Liens and Encumbrances to Stewart Industries International LLC* (the "Airframe Sale Motion"), seeking authority to sell two airframes free and clear of liens and encumbrances to Stewart Industries International LLC for $436,334.00. On June 26, 2008, the Court entered an Order approving the Airframe Sale Motion.

21. On May 29, 2008, the Trustee filed his *Motion for Entry of Order Authorizing Trustee to (A) Sell Personal Property Free and Clear of Liens and Encumbrances Via Public Auction or Private Sale; (B) Pay Auctioneers' Commissions and Expenses Without Further Court Order* ("Personal Property Sale Motion"), seeking authority to sell, via public or private sale, substantially all of

the Debtors' remaining personal property, including ground equipment, passenger service equipment, surface transport equipment (vehicles), office furniture and equipment, including computers and printers, various machinery and fixtures (including aircraft engines, food service equipment, ramp and storage equipment), airframes and expendable aircraft parts inventory (collectively, the "Personal Property").

22. In the Personal Property Sale Motion, the Trustee sought to "(a) sell, via public or private sale, [the Personal Property] . . . .; and (b) authorizing the Trustee to pay the auctioneers to pay their respective commissions and out-of-pocket expenses without further order of the Court." *See* Personal Property Sale Motion at 2. On June 6, 2008, the Court entered an order approving the Personal Property Sale Motion.

23. On June 3, 2008, the Trustee filed his *Emergency Motion for Order Authorizing Sale of Debtors' Interests in Mesa Litigation* (the "Mesa Lawsuit Motion"), seeking authority to sell the Debtors' interest in the "Mesa Litigation" to Yucaipa Corporate Initiative Fund I, L.P. pursuant to a credit bid of $10 million. On June 27, 2008, the Court entered an Order and Findings of Fact and Conclusions of Law granting the Mesa Lawsuit Motion.

### The Auctions of the Personal Property and Aviation Property

24. McClain Auctions has conducted an auction of certain of the non-aviation property, primarily located at the Waterfront Plaza on June 12, 2008. Ostrin & Ostrin Co., the Trustee's California auctioneer, has auctioned certain of the non-aviation property located in Southern California.

25. On July 1, 2008, the Court entered an amended Order authorizing the Trustee to employ Starman Bros. Auctions Inc. ("Starman"), to auction the Debtors' aviation property.

26. An on-line auction of the Debtors' aviation property (including aircraft, engines, rotable parts and the right to purchase certain Boeing landing gear upon completion) commenced August 4, 2008, and will close August 8, 2008. A live auction of other property (such as Ground Support Equipment, tooling and catering equipment and expendable parts) located in California will be held in Oakland on August 8, 2008. A similar live auction of the Debtor's aviation-property is scheduled to be held in Honolulu on August 12 through 14, 2008.

### SERVICES PROVIDED DURING PERIOD AND ALLOWANCE OF FEES

27. The legal services rendered by Applicant for the period May 1, 2008 through July 31, 2008 ("Application Period"), are itemized in the invoices which are attached as Exhibit "A" hereto and incorporated herein by reference.

28. Applicant requests approval for fees in the amount of $274,177.39 for

the Application Period, including Hawaii general excise tax computed as set forth and explained in Exhibit "A." Applicant also billed the Debtor $9,917.23 in actual and necessary expenses as set forth and explained in Exhibit "A."

29. During the Application Period, Applicant assisted the Trustee by providing services in the following five categories:

    a. <u>Transition and Saltchuk Sale ($93,803.63)</u> Most of Applicant's time during the month of May was devoted to prosecuting the Cargo Sale Motion and the CBA Rejection Motion, which were filed on May 2, 2008 and approved on May 12, 2008. ALPA, which opposed both motions, served subpoenas which required the production of thousands of documents. The ALPA litigation also required a discovery hearing before the Court and several depositions, including the depositions in Honolulu of Al Patison (a former Aloha executive) and the Trustee. During the first two weeks of May, Applicant conferred dozens of times with special counsel regarding sale and union issues, met with the Trustee and Aloha's former management team regarding continued operations, and assisted the Trustee in addressing and resolving numerous statements and objections to the Cargo Sale Motion and in negotiating language in the order and findings that were acceptable to the buyer and creditors on an expedited basis. Applicant also reviewed and commented upon various sale documents drafted by the Char Sakamoto firm, and addressed post-closing sale issues with the buyers of the Contract Services Business and the Air Cargo Business. Finally, Applicant billed time in this category to review of certain documents in connection with the closing of the Air Cargo sale which was handled by the Char Sakamoto firm.

    b. <u>Communications with Creditors and Claims ($49,440.82)</u> Applicant assisted the Trustee in responding to creditor inquiries including from health care providers, landlords, airport authorities (regarding passenger facility charges and security deposits) and other interested parties. Applicant responded to motions filed by Kaiser Health, Jetlease, Waterfront Plaza, the State of Hawaii and Sprint. Applicant attended the meeting of creditors with the

Trustee. Applicant also sought reconsideration of the Court's order granting in part and denying in part, Jetlease's motion, and prepared and filed a motion to reject certain unexpired leases.

c. Employment and Fee Matters ($15,701.57) Applicant reviewed and commented on the employment applications of special counsel for the Trustee, including Latham & Watkins and Watanabe Ing & Komeiji as special counsel for the Trustee for the "Mesa Litigation." The Office of the United States Trustee ("UST") requested additional disclosures and limitations on the proposed employment of these firms. Applicant also prepared the employment applications for itself and three different auctioneers and reviewed the fee applications of certain chapter 11 professionals.

d. Asset Disposition ($102,290.01) To assist the Trustee in liquidating assets located in Hawaii, the mainland and in Costa Rica, the Trustee required the continued services of many former Aloha employees. Applicant obtained Court approval to employ, through an employee leasing service, certain former executives and employees. During the Application Period, the Trustee received offers for certain of the Debtors' assets and numerous inquiries, including a "credit bid" offer from one of the Debtors' lessors. Applicant obtained approval for the Airframe Sale Motion, the Personal Property Sale Motion, a motion to sell excess jet fuel, a motion for relief from stay to allow an insurance carrier to defend a DOL investigation, and a motion to terminate a defined-benefit pension plan. Applicant also negotiated and documented the sale of the "Mesa Litigation" to Yucaipa, which was opposed by Mesa Airlines. The matter was put over for several hearings before the Court finally approved the motion. Applicant assisted the Trustee in determining which of various insurance policies to maintain, and responding to AICCO, which sought relief from stay to terminate its financing of certain of the Debtors' insurance policies. Applicant has also assisted the Trustee with regard to his obligations as plan administrator for various Aloha pension plans.

e. Litigation ($12,941.36) The Trustee inherited certain adversary proceedings initiated prior to the conversion date, including two adversary proceedings involving ALPA, and a purported class

action WARN claim act as well as the "Mesa Litigation" which is pending in the United States District Court. Applicant appeared in the District Court and prepared and filed an answer in the WARN adversary, and a separate WARN claim act commenced by the Association of Flight Attendants.

30. Bankruptcy Code section 331 authorizes this Court to allow interim compensation to professionals employed "not more than once every 120 days after an order for relief under this title . . . ." 11 U.S.C. § 331.

31. Bankruptcy Code section 330(a)(1) authorizes the Court to award reasonable compensation and reimbursement for actual, necessary expenses to a professional. 11 U.S.C. § 330(a)(1). Bankruptcy Code section 330(a)(3) provides:

> (3) In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

32. As detailed in Exhibit "A" hereto and the LBR 2016-1b Summary Sheet filed herewith, the services provided by Applicant during the Application Period were provided at a blended hourly rate of approximately $330.00 by the Applicant's attorneys. Applicant submits that the hourly rates for services performed by its attorneys in this case are reasonable. These rates are the same as are charged to non-bankruptcy clients by Applicant and are consistent with the rates approved by this Court in cases which were pending during the periods for which compensation is requested.

33. While the number of attorney hours billed during the Application Period is relatively high (788.20), the representation included significant litigation and a sale of an operating division of the Debtors' business in a period of two weeks. Further complicating the case was the relatively sudden shut-down of most of the Debtors' operations and the resulting uncertainty created for chapter 11 and chapter 7 administrative creditors. Applicant submits that the total interim compensation being sought is reasonable considering the nature, extent and value of such services, and all other relevant factors.

34. No agreement or understanding exists between the Applicant and any

other person regarding a division of any compensation to be received for services performed in connection with this case.

WHEREFORE, Applicant prays that the Court enter an order: (a) allowing to Applicant, interim fees in the amount of $274,177.39, and reimbursement of expenses in the amount of $9,917.23, for a total compensation of $284,094.62, for services provided during the Application Period, or such other amounts as the Court shall deem fair and reasonable; and (b) granting such other relief as the Court deems fair and just.

DATED: Honolulu, Hawaii, August 7, 2008.

Respectfully submitted,

/s/ Chuck C. Choi
Chuck C. Choi
Counsel for Dane S. Field,
Chapter 7 Trustee