# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>ALOHA AIRLINES, INC., a Delaware corporation, et al.,<br><br>Debtors<br><br>This Document relates to: All Cases | Case No. 08-00337<br>(Chapter 7 Cases)<br>(Jointly Administered) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: TRUSTEE'S MOTION FOR ORDER APPROVING SETTLEMENT BETWEEN THE ESTATE, ALPA, AND THE ALPA PLANS

This is a contested matter in bankruptcy. Fed.R.Bankr.P. 9014. The bankruptcy estates of 3 debtors, Aloha Airlines, Inc., Aloha Airgroup, Inc., and Airgroup Acquisitions Corp. (collectively and individually referred to as "Debtor" or "Aloha") are being jointly administered.

The Trustee in Bankruptcy, Dane S. Field, filed a Motion for Order Approving Settlement among the bankruptcy estate, the Air Line Pilots

Association ("ALPA"), and the Aloha Airlines, Inc., Pilots Disability Plan ("LTD Plan"); The Aloha Airlines, Inc., Pilots Equity Annuity Plan ("EAP"); and the Aloha Airlines, Inc., Pilots 401(k) Plan ("401k Plan") (collectively the "ALPA Plans").

The proposed settlement fixes the division of expenses related to the termination of the ALPA Plans, which were created by agreements between Aloha and ALPA, representing the debtor's pilots.

The motion was heard before the undersigned bankruptcy judge on October 3, 2008. James A. Wagner, Esq., of Wagner Choi & Verbrugge, and Sheldon Kline, Esq., of Sheppard Mullin Richter & Hampton, appeared for the Trustee. Mr. Kline appeared telephonically. Richard M. Seltzer, Esq., and Victoria Fortuna, Esq., appeared telephonically for ALPA. The motion was opposed by Hawaiian Electric Company, Inc., which was represented by Kimo C. Leong, Esq., of Taylor, Leong & Chee, and The Gas Company, LLC, which was represented by Don Jeffrey Gelber, Esq., of Gelber, Gelber & Ingersoll. Also appearing were Cuyler E. Shaw, Esq., of Ashford & Wriston, for the State of Hawaii, Kurt K. Leong, Esq., of Oliver Lau Lawhn Ogawa & Nakamura, and Jeffrey Bartos, Esq., for the Association of Flight Attendants. Mr. Bartos appeared telephonically.

U.S. Bankruptcy Court - Hawaii   #08-00337   Dkt # 1209   Filed 11/06/08   Page 2 of 15

Upon consideration of the pleadings and arguments in support of and objection to the motion, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Aloha operated commercial air transportation services based in the State of Hawaii. As of the Petition Date, Aloha had approximately 3,550 employees.

2. In addition to passenger transportation, Aloha provided cargo transportation services through its Air Cargo Division and aviation contract services to other airlines through its Air Cargo Division.

3. As a certified air carrier engaged in interstate air transportation, Aloha had well-established collective bargaining relationships with four international labor organizations, which represented approximately 3,100 of Aloha's approximately 3,500 employees in five unions. Accordingly, Aloha was party to the following six separate collective bargaining agreements (the "CBAs"):

    (a) Collective Bargaining Agreement, dated January 1, 2003, by and between the ALPA and Aloha, as amended on April 30, 2006, and by certain Letters of Agreement, Memoranda of Understandings and grievance settlements thereto, covering Aloha's pilots (the "ALPA CBA");

    (b) Collective Bargaining (Basic) Agreement, dated January 1, 2003, by and between the AFA and Aloha, as amended on April 30, 2006, and by certain Letters of Agreement, Memoranda of Understandings and grievance settlements thereto, covering Aloha's flight attendants (the "AFA CBA");

U.S. Bankruptcy Court - Hawaii #08-00337 Dkt # 1209 Filed 11/06/08 Page 3 of 15

(c) Collective Bargaining Agreement, dated January 1, 2005, by and between the International Association of Machinists and Aerospace Workers, District 141 and Aloha, covering clerical, office, passenger service, fleet and store employees;

(d) Collective Bargaining Agreement, dated November 7, 2005, by and between the International Association of Machinists and Aerospace Workers, District 142 and Aloha, covering Aloha's mechanics;

(e) Collective Bargaining Agreement, dated May 1, 2006, by and between the IAM District 141 and Aloha, covering Aloha's contract service employees; and

(f) Collective Bargaining Agreement, dated May 1, 2006, by and between the Transport Workers Union of America ("TWU") and Aloha, covering Aloha's dispatchers and crew schedulers.

4. For the benefit of ALPA'S members, Aloha maintained the following pension and benefit plans: ALPA Annuity Plan, ALPA 401(k) Plan, ALPA Disability Plan, AFA Pension Plan, and Aloha 401(k) Plan (collectively, the "Aloha Plans").

5. With the exception of the ALPA Disability Plan, Aloha acted as the plan administrator for each of the Aloha Plans prior and up to the Petition Date. The Plan Board acted as a plan administrator for the ALPA Disability Plan. The Plan Board included representatives appointed by Aloha and by ALPA.

6. Where a debtor has served as a plan administrator at the time of commencement of the bankruptcy case, it is a duty of the chapter 7 trustee to "continue to perform the obligations required of the administrator". 11 U.S.C. §704(a)(11).

4

U.S. Bankruptcy Court - Hawaii #08-00337 Dkt # 1209 Filed 11/06/08 Page 4 of 15

7. Each of the Aloha Plans and related trust agreements contains terms concerning the payment of costs and expenses associated with the administration of such plans, for procedures in connection with the amendment of each such plan, and for termination thereof.

8. The ALPA 401(k) Plan provides, in pertinent part:

    (a) "<u>Costs and Expenses</u>. The Trustee, investment manager and record-keeping fees and expenses shall be paid by the Company as provided in the [ALPA CBA]. Any other fees and expenses shall be paid as agreed to between the Company and [ALPA]." ALPA 401(k) Plan § 16.5.

    (b) "<u>Amendment</u>. The Company and [ALPA] may amend the Plan and the Trust at any time, and from time to time, by joint agreement. No such amendment, however, shall have the effect of reducing any then nonforfeitable benefits of any Participant." ALPA 401(k) Plan § 19.6.

    (c) "<u>Plan Termination</u>. The Company and [ALPA] contemplate that the Plan and the Trust shall be permanent. Nevertheless, in recognition of the fact that future conditions and circumstances cannot now be entirely foreseen, the Company and [ALPA] reserve the right to terminate either or both the Plan and the Trust by joint agreement." ALPA 401(k) Plan § 19.1.

In addition, the trust agreement under the ALPA 401(k) Plan provides, in pertinent part:

"Expenses of Administration. Expenses incurred by the Sponsor, Administrative Fiduciary, Investment Fiduciary, any Investment Manager designated pursuant to Section 4.02, or any other persons designated to act on behalf of the Sponsor, Administrative Fiduciary or Investment Fiduciary, including reimbursement for expenses incurred in the performance of their respective duties shall be paid

5

from the Trust unless paid directly by the Sponsor." Trust Agreement § 5.05.

9. The ALPA Annuity Plan provides, in pertinent part:

   (a) "Exclusive Benefit of Members. The Plan and Trust shall be administered for the exclusive benefit of the Members, Retired members, and their Beneficiaries and shall not be used for, or diverted to, any other purposes. Notwithstanding the foregoing, the Trust may pay reasonable expenses incurred in the administration of the Plan as provided in the [ALPA CBA]." ALPA Annuity Plan § 15.1.

   (b) "Plan Administrator Responsibilities. . . . All usual costs of administering the Plan shall be borne by the Company except as provided in the [ALPA CBA]." ALPA Annuity Plan § 15.2(e).

   (c) "Trustee. . . . The expenses incurred by the Trustee in the administration of the Trust Fund and its compensation for services as such Trustee shall be paid for by the Company except as provided in the [ALPA CBA]." ALPA Annuity Plan § 17.2.

   (d) "Amendment and Duration of the Plan. The Company expects the Plan to be permanent, but since future conditions affecting the Company cannot be anticipated or foreseen, the obligation of the Company under the Plan, including the obligation to make contributions as herein provided in this Plan, shall continue in full force and effect concurrently with the [ALPA CBA] presently in effect and shall renew itself without change until each succeeding [ALPA CBA] executed thereafter, unless written notice of intended change or cancellation is served in accordance with Section 6, Title 1, of the Railway Labor Act, as amended, by either the Company or the Association. Any modification, change, termination, or discontinuance of all or any part of this Plan not effected by the foregoing provisions may and shall be effected only by the written consent of the

6

U.S. Bankruptcy Court - Hawaii    #08-00337    Dkt # 1209    Filed 11/06/08    Page 6 of 15

Company and [ALPA]. However, any modification, change, termination, or discontinuance shall not decrease a Member's vested interest under this Plan as of the date of such modification, change, termination, or discontinuance." ALPA Annuity Plan § 20.1.

(e) "Termination of the Plan. In the event of termination or upon complete discontinuance of Company contributions, no further Company or Member contributions shall be made to the Plan and the Trust Fund shall be applied to the extent adequate to provide, in accordance with the provisions of the Plan as in effect at the time of such termination, all benefits according to the date of such termination." ALPA Annuity Plan § 20.2.

In addition, the trust agreement under the ALPA Annuity Plan provides, in pertinent part:

"Expenses of Administration. Expenses incurred by the Sponsor, Administrative Fiduciary, Investment Fiduciary, any Investment Manager designated pursuant to Section 4.02, or any other persons designated to act on behalf of the Sponsor, Administrative Fiduciary or Investment Fiduciary, including reimbursement for expenses incurred in the performance of their respective duties shall be paid directly by the Sponsor unless the Administrative Fiduciary agrees to have it paid from the Trust." Trust Agreement § 5.05.

10. The ALPA Disability Plan provides, in pertinent part:

(a) "Expenses: All expenses of this Plan shall be paid by the Company, unless otherwise agreed by the Retirement Board." ALPA Disability Plan § 4.3.

(b) "Amendment: The Company and [ALPA] may at any time, and from time to time, amend the Plan, in writing executed by the Company and [ALPA], either prospectively or retroactively; provided, however, that any such amendment may not affect in any way the amount or terms of benefits accrued prior to the date of such action, or cutback, alter, or

7

modify any rights provided for in the [ALPA CBA] . . . . All amendments shall be evidenced by written instrument executed by the Company, [ALPA], and the Retirement Board." ALPA Disability Plan § 6.1(a).

(c) "Termination: The Company may, with the prior written approval of [ALPA], terminate the Plan at any time." ALPA Disability Plan § 6.2.

**The Bankruptcy Cases**

11. On March 20, 2008 (the "Petition Date"), the Debtors filed their petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors operated and managed their businesses as debtors-in-possession. 11 U.S C. §§ 1107, 1108.

12. As of the Petition Date, virtually all of the Debtors' assets were encumbered by liens in favor of GMAC Commercial Finance, LLC ("GMAC"), Yucaipa Corporate Initiatives Fund I, LP, and Yucaipa Corporate Initiatives Fund I, LLC (collectively "Yucaipa"). GMAC and Yucaipa were undersecured. As a result, the Debtors' estates had no unencumbered assets or funds.

13. On March 31, 2008, the Debtors discontinued operation of their passenger service business. On April 8, 2008 the Court entered an Order authorizing the Debtors to conduct an auction and sale of the Air Cargo Division and Contract Services Business, as well as to entertain bids for their other assets (Docket No. 202).

14. On April 24, 2008, the Court entered its *Order (A) Authorizing Sale of Debtors' Contract Services Assets Pursuant to 11 U.S.C. Section 363 Free*

8

U.S. Bankruptcy Court - Hawaii #08-00337 Dkt # 1209 Filed 11/06/08 Page 8 of 15

*and Clear of Liens, Claims and Encumbrances and (B) Approving Assumption and Assignment of Assumed Contracts* (Docket No. 331), approving the sale of the Contract Services Business to Pacific Air Cargo, LLC.

15. On April 28, 2008, the Debtors filed a *Motion to Convert Chapter 11 Cases to Cases Under Chapter 7* (Docket No. 356). On April 29, 2008 (the "Conversion Date"), the Court entered an *Order Converting the Chapter 11 Cases of the Debtors to Cases Under Chapter 7* (Docket No. 358).

16. On April 30, 2008, the office of the United States Trustee appointed Dane S. Field to serve as chapter 7 trustee. (Docket No. 364).

17. On May 2, 2008, the Court entered its *Order Authorizing (I) Trustee to Operate Air Cargo Business Pursuant to 11 U.S.C. § 721, (II) Advance of Funds for Trustee's Administration of Estates and For Benefit of Unsecured Creditors, and (III) Postpetition Advances to Maintain Business Operations of Air Cargo Business through Sale Closing* (Docket No. 390) (the "721 Order"), providing that the Trustee was authorized to operate the Air Cargo Division through the closing of the contemplated sale, and to retain certain professionals in connection therewith. See 721 Order at ¶¶ 1 and 3. In addition, the 721 Order provides that:

> In order to administer these Chapter 7 cases, five percent (5.00%) of the proceeds, net of fees and expenses incurred in the sale, which are distributed to GMAC

9

U.S. Bankruptcy Court - Hawaii #08-00337 Dkt # 1209 Filed 11/06/08 Page 9 of 15

resulting from the sale of any Collateral . . . shall be paid to the Trustee to be used by the Trustee to pay the Trustee's fees and expenses, his attorney's fees and expenses, and any other professional fees and expenses incurred by the Trustee in these Chapter 7 cases (collectively, the "<u>Administration Fund</u>"). . . . The payment to the Administration Fund resulting from the sale shall be inclusive of any Trustee's commissions or compensation provided for in section 326(a) of the Bankruptcy Code. . . . In the event there is a surplus in the Administration Fund following the payment of all reasonable fees and expenses of the Trustee and his professionals, such surplus shall be for the sole benefit of other unsecured or priority creditors of the Debtors' estates.

18. The Administrative Fund constitutes the only source of funds currently available to the Trustee to pay the estate's expenses in accordance with the provisions of the 721 Order. At this time, it is not known whether or not there will be a surplus, for the benefit of "unsecured or priority creditors" in the Administrative Fund.

19. On May 2, 2008, the Trustee filed *a Motion to Reject Collective Bargaining Agreements pursuant to 11 U.S.C. § 365(a)* (the "CBA Rejection Motion"), seeking authority to reject all of the Debtors' CBAs (Docket No. 388).

20. The Court entered its Order approving the CBA Rejection Motion on May 14, 2008 (the "CBA Rejection Order") (Docket No. 523), which

10

U.S. Bankruptcy Court - Hawaii    #08-00337    Dkt # 1209    Filed 11/06/08    Page 10 of 15

authorized the Trustee to reject the CBAs as of the date of the CBA Rejection Motion.

**Events Precipitating This Motion**

21. As of September 19, 2008, the Administrative Fund held approximately $925,000. As of August 20, 2008, each of the Plans held assets in the following approximate amounts: (a) ALPA Annuity Plan – $47,952,243; (b) ALPA 401(k) Plan – $46,273,787; (c) ALPA Disability Plan – $21,494; (d) AFA Pension Plan – $37,193,480; and (e) Aloha 401(k) Plan – $31,559,613.

22. The trustee and ALPA estimate the cost of administration and termination of the plans to be close to $590,000. Most of that amount will be for the fees of attorneys, accountants, and actuaries. An included expense is the cost of fiduciary liability insurance for parties involved in the administration and termination of the ALPA plans.

23. The initial efforts of ALPA and the Trustee to reach a settlement were unsuccessful. On August 20, 2008, the Trustee filed a motion seeking to have the court determine relative responsibilities for the costs of termination of the ALPA plans. (Docket no. 1007) Before that motion was heard, the parties reached the subject proposed settlement.

24. Under the proposed settlement, the Trustee will pay approximately $240,000 of the estimated attorneys', accountants' and actuaries'

11

U.S. Bankruptcy Court - Hawaii #08-00337 Dkt # 1209 Filed 11/06/08 Page 11 of 15

fees. That number includes the fees of the Trustee's special counsel, Sheppard Mullin Richter & Hampton. It does not include the fees of the Trustee's general counsel in this bankruptcy case, Wagner Choi & Verbrugge. The Trustee will also pay $34,000 to continue the fiduciary insurance through February 17, 2009, and $20,000 for adding the Trustee and Plan Board members to the policy. Amended coverage is necessary, because certain insured persons are no longer employees of the Debtor.

## CONCLUSIONS OF LAW

25. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2). Venue is proper. 28 U.S.C. §§ 1408, 1409. The Court has authority to approve the proposed settlement. Fed.R.Bankr.P. 9019(a).

26. Predicting whether the Trustee or ALPA would prevail in litigation of their dispute concerning the expenses of benefit plan termination is a matter of conjecture. The issues, which include both the costs of plan termination and the power of the court to amend the plans without the consent of ALPA, are complex. Relevant case law is sparse, and not especially helpful.

27. Section 704(a)(11), which requires a trustee in bankruptcy to serve as benefit plan administrator, was added to the Bankruptcy Code in 2005. as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,

12

Pub. L. 109-8, 119 Stat. 23 § 446 (Apr. 20, 2005). Neither the Bankruptcy Code nor any reported cases address the treatment or the priority to be given to expenses incurred by the trustee in serving as a plan administrator.

28. The bankruptcy estate is insolvent, but there is enough money in the Administrative Fund to pay the estate's share of the costs of settlement. Since the Administrative Fund was created pursuant to a court approved agreement between the Trustee and the principal secured creditor, GMAC, it can only be used according to the terms of the order. The order authorizes use of the Administrative Fund to pay the Trustee's professional fees and the Trustee's expenses. Most of the cost of the settlement will be for professional fees. The main expense will be the cost of fiduciary liability insurance for the trustee and others working on plan administration. Coverage for the Trustee is clearly a proper Trustee expense. Arguably, the Plan agreements also make the Trustee responsible for the full policy cost. The settlement fairly makes the estate responsible for the fiduciary liability insurance.

29. Payment of the costs of the proposed settlement from the Administrative Fund will reduce the chances, if any, that there will be a surplus in that fund for payment to priority, unsecured creditors. However, even if ALPA were to prevail in litigation with the trustee, the Administrative Fund would probably be insufficient to pay both the plan termination expenses assigned to the

13

Trustee and the Trustee's professional fees and expenses which would be incurred in the litigation.

30. The issues involved in this dispute are of major importance, for this and future bankruptcy cases. Any ruling by the bankruptcy court would be likely to lead to one or more appeals.

31. ALPA, the ALPA Plans, and the Trustee have engaged in good faith, arms-length negotiations. Those negotiations have led to a result which is in the best interests of all parties concerned. Failure to achieve a consensual resolution of this dispute would expose all parties to long and expensive litigation, with no benefit to the bankruptcy estate and its creditors, and only possible benefit to ALPA, given the insolvent financial condition of the estate.

32. In light of the issues raised and efforts of the parties to reach a reasonable, good faith settlement, the proposed settlement provides for appropriate exculpatory language in the order granting the Motion.
"Exculpated parties" for purposes of this settlement include the Trustee and his staff and professionals, ALPA, ALPA's members, officers, committee members, agents, representatives, consultants, professionals, and employees, and the members of the Retirement Boards of the EAP, the 401(k) Plan, and the LTD Plan. It is appropriate that no exculpated party will have or incur, and each exculpated party will be released and exculpated from any liability with

U.S. Bankruptcy Court - Hawaii    #08-00337    Dkt # 1209    Filed 11/06/08    Page 14 of 15

respect to any Exculpated Claim, except for the gross negligence or willful misconduct of such party. An "Exculpated Claim" is defined as any claim, regardless of legal theory or the forum in which such claim is or might be asserted, but for the exculpation provision, with respect to any actual or asserted act or omission in connection with, relating to, or arising out of the Agreement or Settlement Motion or any documents related to the Agreement or Settlement Motion, including without limiting the generality of the foregoing, any ALPA Plan amendments (collectively, the "Agreement Documents"), and the formulation, preparation, dissemination, negotiation, implementation, administration or filing of the Agreement Documents.

33. In the absence of a settlement, the parties face the years and substantial expenses of continued litigation.

34. Taking everything into consideration, the benefit to the estate, the unsettled status of the law affecting this matter, the risks of rejection of the settlement and possible appeals, the fact that this is an arms-length good faith settlement, the proposed settlement is fair and equitable and should be approved.

Dated: Honolulu, Hawaii, November 6, 2008.

/s/ Lloyd King
Lloyd King
U.S. Bankruptcy Judge

15

U.S. Bankruptcy Court - Hawaii   #08-00337   Dkt # 1209   Filed 11/06/08   Page 15 of 15