JAMES A. WAGNER
CHUCK C. CHOI
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Facsimile: (808) 566-6900
Email: cchoi@wcelaw.com

Counsel to Chapter 7 Trustee

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>ALOHA AIRLINES, INC., a Delaware corporation, et al., [1]<br><br>Debtors<br><br>This Document relates to: All Cases<br><br>61052 | Case No. 08-00337<br>(Chapter 7 Cases)<br>(Jointly Administered)<br><br><br>Judge: Hon. Lloyd King |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
## RE: TRUSTEE'S MOTION FOR ORDER APPROVING SETTLEMENT
## BETWEEN THE ESTATE, AFA, AND THE AFA PLAN

This is a contested matter in bankruptcy. Fed.R.Bankr.P. 9014. The bankruptcy estates of 3 debtors, Aloha Airlines, Inc., Aloha Airgroup, Inc., and Airgroup Acquisitions Corp. (collectively and individually referred to as "Debtor" or "Aloha") are being jointly administered.

The Trustee in bankruptcy, Dane S. Field, filed a Motion for Order Approving Settlement between the bankruptcy estate and the Association of Flight Attendants-CWA ("AFA") concerning the division of expenses under the Retirement Plan for Flight Attendants of Aloha Airlines, Inc., established March 2, 1973, as restated on January 1, 2001 and subsequently amended ("AFA Plan").

The proposed settlement fixed the division of expenses related to the termination of the AFA Plan, which was created by agreement between Aloha and AFA, representing the Debtor's flight attendants.

The Motion was heard before the undersigned bankruptcy judge on November 18, 2008. James A. Wagner, Esq. of Wagner Choi & Verbrugge appeared for the Trustee. Kurt K. Leong, Esq. and Jeffrey Bartos, Esq. appeared for AFA. Mr. Bartos appeared telephonically for AFA. The Motion was not opposed.

Upon consideration of the pleadings and arguments in support of the Motion, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Aloha operated commercial air transportation services based in the State of Hawaii. As of the Petition Date, Aloha had approximately 3,550 employees.

2

U.S. Bankruptcy Court - Hawaii #08-00337 Dkt # 1241 Filed 11/26/08 Page 2 of 13

2. In addition to passenger transportation, Aloha provided cargo transportation services through its Air Cargo Division and aviation contract services to other airlines through its Air Cargo Division.

3. As a certified air carrier engaged in interstate air transportation, Aloha had well-established collective bargaining relationships with four international labor organizations, which represented approximately 3,100 of Aloha's approximately 3,500 employees in five unions. Accordingly, Aloha was party to the following six separate collective bargaining agreements (the "CBAs"):

(a) Collective Bargaining Agreement, dated January 1, 2003, by and between the ALPA and Aloha, as amended on April 30, 2006, and by certain Letters of Agreement, Memoranda of Understandings and grievance settlements thereto, covering Aloha's pilots (the "ALPA CBA");

(b) Collective Bargaining (Basic) Agreement, dated January 1, 2003, by and between the AFA and Aloha, as amended on April 30, 2006, and by certain Letters of Agreement, Memoranda of Understandings and grievance settlements thereto, covering Aloha's flight attendants (the "AFA CBA");

(c) Collective Bargaining Agreement, dated January 1, 2005, by and between the International Association of Machinists and Aerospace Workers, District 141 and Aloha, covering clerical, office, passenger service, fleet and store employees;

(d) Collective Bargaining Agreement, dated November 7, 2005, by and between the International Association of Machinists and Aerospace Workers, District 142 and Aloha, covering Aloha's mechanics;

3

(e) Collective Bargaining Agreement, dated May 1, 2006, by and between the IAM District 141 and Aloha, covering Aloha's contract service employees; and

(f) Collective Bargaining Agreement, dated May 1, 2006, by and between the Transport Workers Union of America ("TWU") and Aloha, covering Aloha's dispatchers and crew schedulers.

4. For the benefit of AFA's members, Aloha maintained the AFA Plan.

5. Aloha acted as the plan administrator for the AFA Plan prior and up to the Petition Date.

6. Where a debtor has served as a plan administrator at the time of commencement of the bankruptcy case, it is a duty of the chapter 7 trustee to "continue to perform the obligations required of the administrator." 11 U.S.C. § 704(a)(11).

<u>The AFA Plan</u>

8. The AFA Plan provides for the payment of costs and expenses associated with the administration of the AFA Plan, for procedures in connection with the amendment of the AFA Plan, and for termination thereof as follows:

(a) "<u>Expenses of the Plan</u>. The Company shall pay the normal cost of administration and reporting the status of the Retirement Fund;..." AFA Pension Plan § 9.2.

(b) "<u>Amendment</u>. It is the intention of the Company to continue the Plan indefinitely, but the Company reserves the right to change, modify, amend or discontinue the Plan at any time, subject at all times to the [AFA CBA]." AFA Pension Plan § 11.1.

4

(c) "<u>Bankruptcy or Other Contingencies Affecting the Company</u>. In the event the Company is dissolved or liquidated, or shall by appropriate legal proceedings be adjudged bankrupt . . . the Plan shall thereupon terminate[.]" AFA Pension Plan § 12.1.

**The Bankruptcy Cases**

9. On March 20, 2008 (the "Petition Date"), the Debtors filed their petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors operated and managed their businesses, as debtors-in-possession, pursuant to Bankruptcy Code sections 1107 and 1108 until the cases were converted to cases under chapter 7.

10. As of the Petition Date, virtually all of the Debtors' assets were encumbered by liens in favor of GMAC Commercial Finance, LLC ("GMAC"), Yucaipa Corporate Initiatives Fund I, LP, and Yucaipa Corporate Initiatives Fund I, LLC (collectively "Yucaipa"). GMAC and Yucaipa were undersecured. As a result, the Debtors' estates had no unencumbered assets or funds.

11. On March 31, 2008, the Debtors discontinued operation of their passenger service business. On April 8, 2008 the Court entered an Order authorizing the Debtors to conduct an auction and sale of the Air Cargo Division and Contract Services Business, as well as to entertain bids for their other assets (Docket No. 202).

12. On April 24, 2008, the Court entered its *Order (A) Authorizing Sale of Debtors' Contract Services Assets Pursuant to 11 U.S.C. Section 363 Free*

5

*and Clear of Liens, Claims and Encumbrances and (B) Approving Assumption and Assignment of Assumed Contracts* (Docket No. 331), approving the sale of the Contract Services Business to Pacific Air Cargo, LLC.

13. On April 28, 2008, the Debtors filed a *Motion to Convert Chapter 11 Cases to Cases Under Chapter 7* (Docket No. 356). On April 29, 2008 (the "Conversion Date"), the Court entered an *Order Converting the Chapter 11 Cases of the Debtors to Cases Under Chapter 7* (Docket No. 358).

14. On April 30, 2008, the office of the United States Trustee appointed Dane S. Field to serve as chapter 7 trustee (Docket No. 364).

15. On May 2, 2008, the Court entered its *Order Authorizing (I) Trustee to Operate Air Cargo Business Pursuant to 11 U.S.C. § 721, (II) Advance of Funds for Trustee's Administration of Estates and For Benefit of Unsecured Creditors, and (III) Postpetition Advances to Maintain Business Operations of Air Cargo Business through Sale Closing* (Docket No. 390) (the "721 Order"), providing that the Trustee was authorized to operate the Air Cargo Business through the closing of the contemplated sale, and to retain certain professionals in connection therewith. See 721 Order at ¶¶ 1 and 3. In addition, the 721 Order provides that:

> In order to administer these Chapter 7 cases, five percent (5.00%) of the proceeds, net of fees and expenses incurred in the sale, which are distributed to GMAC

6

resulting from the sale of any Collateral ... shall be paid to the Trustee to be used by the Trustee to pay the Trustee's fees and expenses, his attorney's fees and expenses, and any other professional fees and expenses incurred by the Trustee in these Chapter 7 cases (collectively, the "<u>Administration Fund</u>"). ... The payment to the Administration Fund resulting from the sale shall be inclusive of any Trustee's commissions or compensation provided for in section 326(a) of the Bankruptcy Code. ... In the event there is a surplus in the Administration Fund following the payment of all reasonable fees and expenses of the Trustee and his professionals, such surplus shall be for the sole benefit of other unsecured or priority creditors of the Debtors' estates.

16. The Administrative Fund constitutes the only source of funds currently available to the Trustee to pay the estate's expenses in accordance with the restrictions outlined in the 721 Order. At this time, it is not known whether or not there will be a surplus, for the benefit of "unsecured or priority creditors" in the Administrative Fund.

17. On May 2, 2008, the Trustee filed *a Motion to Reject Collective Bargaining Agreements pursuant to 11 U.S.C. § 365(a)* (the "CBA Rejection Motion"), seeking authority to reject all of the Debtors' CBAs (Docket No. 388).

18. The Court entered its Order approving the CBA Rejection Motion on May 14, 2008 (the "CBA Rejection Order") (Docket No. 523), which

U.S. Bankruptcy Court - Hawaii    #08-00337    Dkt # 1241    Filed 11/26/08    Page 7 of 13

authorized the Trustee to reject the CBAs as of the date of the CBA Rejection Motion.

**Events Precipitating This Motion**

19. As of September 19, 2008, the Administrative Fund held approximately $925,000. As of August 20, 2008, each of the Plans held assets in the following approximate amounts: (a) ALPA Annuity Plan – $47,952,243; (b) ALPA 401(k) Plan – $46,273,787; (c) ALPA Disability Plan – $21,494; (d) AFA Pension Plan – $37,193,480; and (e) Aloha 401(k) Plan – $31,559,613.

20. The trustee and AFA estimate the cost of administration and termination of the AFA Plan to be close to $226,000. Most of that amount will be for the fees of attorneys, accountants, and actuaries. An included expense is the cost of fiduciary liability insurance for parties involved in the administration and termination of the AFA Plan.

21. The initial efforts of AFA and the Trustee to reach a settlement were unsuccessful. On August 20, 2008, the Trustee filed a motion seeking to have the court determine relative responsibilities for the costs of termination of the AFA and other plans (Docket No. 1007). Before that motion was heard, the parties reached the subject proposed settlement.

22. Under the proposed settlement, the Trustee will pay approximately $90,000 of the estimated attorneys', accountants' and actuaries'

8

fees. That number includes the fees of the Trustee's special counsel, Sheppard Mullin Richter & Hampton. It does not include the fees of the Trustee's general counsel in this bankruptcy case, Wagner Choi & Verbrugge, which may not be charged to the AFA Plan. The Trustee will also pay the balance of the $34,000 in premium finance payments to continue the current fiduciary insurance policy in effect through February 17, 2009. The AFA Plan will pay all other costs of termination of the AFA Plan, including a pro rata share of the cost of amending the fiduciary policy to cover board members who are no longer employees of the Debtor.

## CONCLUSIONS OF LAW

23. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2). Venue is proper. 28 U.S.C. §§ 1408, 1409. The Court has authority to approve the proposed settlement. Fed.R.Bankr.P. 9019(a).

24. Predicting whether the Trustee or AFA would prevail in litigation of their dispute concerning the expenses of benefit plan termination is a matter of conjecture. The issues, which include both the costs of plan termination and the power of the court to amend the plan without the consent of AFA, are complex. Relevant case law is sparse, and not especially helpful.

9

25. Section 704(a)(11), which requires a trustee in bankruptcy to serve as benefit plan administrator, was added to the Bankruptcy Code in 2005, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 § 446 (Apr. 20, 2005). Neither the Bankruptcy Code nor any reported cases address the treatment or the priority to be given to expenses incurred by the trustee in serving as a plan administrator.

26. The bankruptcy estate is insolvent, but there is enough money in the Administrative Fund to pay the estate's share of the costs of settlement. Since the Administrative Fund was created pursuant to a court approved agreement between the Trustee and the principal secured creditor, GMAC, it can only be used according to the terms of the order. The order authorizes use of the Administrative Fund to pay the Trustee's professional fees and the Trustee's expenses. Most of the cost of the settlement will be for professional fees. The main other expense will be the cost of pre-petition fiduciary liability insurance premium finance payments. Maintaining coverage for the Trustee is clearly a proper Trustee expense.

27. Payment of the costs of the proposed settlement from the Administrative Fund will reduce the chances, if any, that there will be a surplus in that fund for payment to priority, unsecured creditors. However, even if AFA were to prevail in litigation with the trustee, the Administrative Fund would probably be

10

insufficient to pay both the plan termination expenses assigned to the Trustee and the Trustee's professional fees and expenses which would be incurred in the litigation.

28. The issues involved in this dispute are of major importance, for this and future bankruptcy cases. Any ruling by the bankruptcy court would be likely to lead to one or more appeals.

29. AFA and the Trustee have engaged in good faith, arms-length negotiations. Those negotiations have led to a result which is in the best interests of all parties concerned. Failure to achieve a consensual resolution of this dispute would expose all parties to long and expensive litigation, with no benefit to the bankruptcy estate and its creditors, and only possible benefit to AFA, given the insolvent financial condition of the estate.

30. In light of the issues raised and efforts of the parties to reach a reasonable, good faith settlement, the proposed settlement provides for appropriate exculpatory language in the order granting the Motion. "Exculpated parties" for purposes of this settlement include the Trustee and his staff and professionals, AFA, AFA's members, officers, committee members, agents, representatives, consultants, professionals, and employees, and the members (including alternate members) of the Benefits Board of the AFA Plan. It is appropriate that no exculpated party will have or incur, and each exculpated party will be released and

U.S. Bankruptcy Court - Hawaii #08-00337 Dkt # 1241 Filed 11/26/08 Page 11 of 13

exculpated from any liability with respect to any Exculpated Claim, except for the gross negligence or willful misconduct of such party. An "Exculpated Claim" is defined as any claim, regardless of legal theory or the forum in which such claim is or might be asserted, but for the exculpation provision, with respect to any actual or asserted act or omission in connection with, relating to, or arising out of the Agreement or Settlement Motion or any documents related to the Agreement or Settlement Motion, including without limiting the generality of the foregoing, any AFA Plan amendments (collectively, "Agreement Documents"), and the formulation, preparation, dissemination, negotiation, implementation, administration or filing of the Agreement Documents.

31. In the absence of a settlement, the parties face the years and substantial expenses of continued litigation.

//

//

//

//

//

//

//

//

U.S. Bankruptcy Court - Hawaii   #08-00337   Dkt # 1241   Filed 11/26/08   Page 12 of 13

32. Taking everything into consideration, the benefit to the estate, the unsettled status of the law affecting this matter, the risks of rejection of the settlement and possible appeals, the fact that this is an arms-length good faith settlement, the proposed settlement is fair and equitable and should be approved.

DATED: Honolulu, Hawaii, NOV 2 6 2008.

/s/ Lloyd King
United States Bankruptcy Judge

APPROVED AS TO FORM
AND CONTENT

/s/ Jeffrey Bartos
-----
JEFFREY BARTOS
Attorney for the
Association of Flight Attendants

*In re Aloha Airlines, Inc., et al.*; Bk. No. 08-00337; FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: TRUSTEE'S MOTION FOR ORDER APPROVING SETTLEMENT BETWEEN THE ESTATE, AFA, AND THE AFA PLAN

13